J-S57012-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| HARRY WOLDSMIT, | : | |
| | : | |
| Appellant | : | No. 2757 EDA 2013 |

Appeal from the PCRA Order September 12, 2013,
Court of Common Pleas, Philadelphia County,
Criminal Division at No(s): CP-51-CR-0205021-2006
and CP-51-CR-1005951-2005

BEFORE:  DONOHUE, MUNDY and STABILE, JJ.

MEMORANDUM BY DONOHUE, J.:                **FILED OCTOBER 10, 2014**

Harry Woldsmit ("Woldsmit") appeals *pro se* from the September 12, 2013 order entered by the Philadelphia County Court of Common Pleas dismissing his second petition filed pursuant to the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546 ("PCRA"), as untimely.  We affirm.

The facts of the case, summarized by the trial court in a prior written opinion pursuant to Pa.R.A.P. 1925(a), are as follows:

> On two different occasions, [Woldsmit], while on parole, drove to Kensington Avenue to pick up young women who were willing to perform oral sex in exchange for money.
>
> On August 22, 2005, [Woldsmit] made an agreement with the victim […] to receive oral sex in exchange for $60. [Woldsmit] drove the victim to a location near Venango and Richmond and the victim asked him for her money. [Woldsmit] held a knife to the victim's throat and pulled down the victim's pants.

[Woldsmit] then began vaginally penetrating the victim and eventually digitally penetrating the victim's anus. After [Woldsmit] was finished attacking [the victim], he told her he was a police officer and that he would kill her if necessary. After more threats, [Woldsmit] drove [the victim] a short distance and let her out of the vehicle. She had to exit through the driver's side door because the passenger side door could not be opened from the inside. [The victim] made a photo identification of [Woldsmit] to Detective Norma Serrano at the Special Victim's Unit approximately two and a half weeks later.

On September 2, 2005, [Woldsmit] coaxed his second victim […] into his car and promised to pay her $40 in exchange for oral sex. While in the back seat, [Woldsmit] took out a knife and held it against [the victim's] neck. [Woldsmit] then demanded intercourse and threatened to kill [the victim] if she did not comply. [The victim] attempted to fight off [Woldsmit] and during the struggle, [Woldsmit] slightly, but not fully, penetrated her vagina. Eventually [the victim] was able to escape through the driver's side door and flag down a passing motorist.

On July 18, 2006, both victims appeared in court to testify against [Woldsmit] at a scheduled consolidated jury trial. The two victims had never met each other prior to entering the courtroom on that day. [Woldsmit] then agreed to enter [a] guilty plea. A lengthy factual basis for the two incidents which were of course remarkably similar, was placed on the record with both victims in the court and listening. After [Woldsmit] entered his guilty plea, the Commonwealth requested that the court advise [Woldsmit] of his rights to withdraw a guilty plea, and also about the 'issue of substantial prejudice.' [The trial court] then responded 'I normally don't like to put something out there that someone is not thinking about,' to which [Woldsmit] quipped 'I

> already thought about it. [The district attorney] is not that quick.'

Trial Court Opinion, 6/30/08, at 3-5 (record citations omitted).

On July 18, 2006, Woldsmit pled guilty to two counts each of rape and terroristic threats and one count each of aggravated indecent assault and impersonating a public servant.[1] Although represented by counsel, on September 8, 2006, Woldsmit filed a *pro se* motion to withdraw his guilty plea, claiming therein, in relevant part, that he was innocent of the charges; that his plea was not knowingly and intelligently entered because he "was suffering from the effects of his psychotropic medication, depression, and the guilty plea was the product of his deteriorated physical and mental condition"; and that his attorney was not willing to help him. Motion to Withdraw Guilty Plea, 9/8/06.

The Commonwealth filed a response in opposition to the motion, asserting that Woldsmit did not satisfy his burden of showing that there was a fair and just reason to permit him to withdraw his plea. The Commonwealth further stated that it would suffer substantial prejudice if the trial court permitted him to withdraw his plea, as it was unable to locate the two complainants, both of whom had drug addiction problems and worked as prostitutes. The Commonwealth indicated that Woldsmit was aware of the problems the Commonwealth had locating one of the complainants for trial,

---

[1] 18 Pa.C.S.A. §§ 3121, 2706, 3125, 4912.

which led to the issuance of a bench warrant for her arrest and an initial dismissal of the charges against Woldsmit relating to her assault.

The trial court held three days of hearings on the motion. At those hearings, the Commonwealth presented evidence regarding its claim of substantial prejudice. It further presented recordings of phone conversations between Woldsmit and his now-ex-wife while Woldsmit was incarcerated, during which Woldsmit admitted to raping one of the victims. An issue arose surrounding the Commonwealth's role in Woldsmit's ex-wife procuring Woldsmit's confession on the taped recordings. The prosecutor informed that trial court that Woldsmit's ex-wife contacted him and let him know what Woldsmit was saying on the phone. The prosecutor stated that he informed the ex-wife that all calls made and received by inmates were recorded. The prosecutor asked her if she wished to have Woldsmit's access to contact her shut off, to which she replied that she did not want that at that time.

Unconvinced that Woldsmit's ex-wife was acting at the Commonwealth's behest during these conversations, the trial court denied Woldsmit's request to withdraw his guilty plea on October 20, 2006. Specifically, the trial court found "that the mere assertion of innocence under the facts and circumstances of this case does not establish a just cause or reason to withdraw the plea," and that the Commonwealth would be

prejudiced by permitting Woldsmit to withdraw his plea.  N.T., 10/20/06, at 21-22.

On January 18, 2006, the trial court sentenced Woldsmit to 20 to 40 years of imprisonment.  The trial court further found that he met the criteria for classification as a sexually violent predator.

Woldsmit appealed his judgment of sentence and this Court affirmed on February 3, 2009.  Woldsmit did not file a petition for allowance of appeal with the Pennsylvania Supreme Court.

On January 27, 2010, Woldsmit filed a timely *pro se* PCRA petition.  He filed a second *pro se* petition on April 8, 2010, which the PCRA court accepted as an amended petition.  The PCRA court appointed counsel, who filed a **Turner/Finley**[2] "no merit" letter and a request to withdraw.  On July 1, 2011, the PCRA court dismissed the *pro se* petitions and granted counsel permission to withdraw.

Woldsmit filed a timely notice of appeal, but did not comply with the PCRA court's order for a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).  This Court ultimately dismissed the appeal on October 17, 2012, as Woldsmit failed to file an appellate brief.

On October 10, 2012, a week prior to the dismissal of his PCRA appeal, Woldsmit filed the instant *pro se* PCRA petition.  He asserted that the

---

[2] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988)

trial court denied his request to withdraw his guilty plea based on his admission to his ex-wife over the phone from prison that he was guilty, and that he has new evidence that his ex-wife and the Philadelphia District Attorney's Office "set the whole phone call up." PCRA Petition, 10/10/12, at 3. He appended to his petition several Facebook messages from his ex-wife to someone named Maria Laura Knight Woldsmit, wherein his ex-wife states that she "set him up." *Id.* at Exhibit B.

On June 19, 2013, the PCRA court issued notice of its intention to dismiss Woldsmit's petition without a hearing. Woldsmit did not file a response. The PCRA court dismissed the PCRA petition on September 12, 2013. Woldsmit filed a notice of appeal that same day.

On appeal, Woldsmit raises the following issues for our review:

A. Did the trial court err in denying [Woldsmit]'s request for relief through the P.C.R.A.?

1. Did [the] trial judge violate [Woldsmit]'s right to present [an] alibi-witness [*sic*]?

2. Did [the] trial judge violate ex parte communications rules?

3. Has [the] trial judge abused his discretion?

B. Did the Commonwealth violate [Woldsmit]'s due process rights?

Woldsmit's Brief at 6.[3]

We review the denial of a PCRA petition on timeliness grounds according to the following standard:

> In reviewing the denial of PCRA relief, we examine whether the PCRA court's determination is supported by the record and free of legal error. The PCRA timeliness requirement, however, is mandatory and jurisdictional in nature. The court cannot ignore a petition's untimeliness and reach the merits of the petition. Section 9545(b)(1) requires a petitioner to file a PCRA petition within one year of the date the judgment [became] final.

*Commonwealth v. Taylor*, 67 A.3d 1245, 1248 (Pa. 2013) (internal citations and quotations omitted). "[A] judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S.A. § 9545(b)(3).

The judgment of sentence in the case at bar became final on March 5, 2009 – 30 days after this Court affirmed Woldsmit's judgment of sentence on direct appeal. *See* Pa.R.A.P. 1113(a) (A petition for allowance of appeal to the Pennsylvania Supreme Court must be filed within 30 days of the entry of the Superior Court order to be reviewed.). Thus, the instant PCRA petition, filed on October 10, 2012, is facially untimely.

---

[3] Woldsmit's appellate brief is not paginated. For ease of reference, we have assigned numbers to each page, beginning with the first page after the cover as page 1.

Section 9545(b)(1) provides three statutory exceptions to the timeliness provisions that allow for very limited circumstances under which the late filing of a PCRA petition will be excused:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. § 9545(b)(1). "Any petition invoking an exception provided in paragraph (1) shall be filed within 60 days of the date the claim could have been presented." 42 Pa.C.S.A. § 9545(b)(2).

The PCRA court attempted to give Woldsmit the benefit of the second exception – commonly known as the newly discovered fact exception to the timeliness requirements. *See* PCRA Court Opinion, 6/19/13, at 3, 7. The PCRA court concluded, in relevant part, that the fact that Woldsmit's ex-wife set Woldsmit up to confess his guilt over the phone in prison was known in 2006. *Id.* at 8. The PCRA court goes on to say that the motion to withdraw his plea was not denied based upon the phone call, but was really based

upon the prejudice that would befall the Commonwealth if Woldsmit withdrew his plea. *Id.*

In his appellate brief, Woldsmit argues **against** the Facebook messages being considered as a newly discovered fact and chastises the PCRA court for referring to this as new evidence. Woldsmit's Brief at 18-19. Woldsmit appears to agree that the PCRA court was aware in 2006 that his wife set him up. Woldsmit details how the prosecutor admitted on the record that he was aware that Woldsmit's wife was speaking with Woldsmit about the charges and that the prosecutor informed her that the calls were being recorded. *Id.* at 19. The prosecutor stated at the hearing that Woldsmit's ex-wife was acting only with the prosecutor's "knowledge," and was not fulfilling any request he made for her to question Woldsmit about anything. *Id.* (citing PCRA Court Opinion, 6/19/13, at 7); *see* N.T., 10/20/06, at 7. According to Woldsmit, "[Stevie] Wonder could see that that was a request [by the prosecutor] for help." Woldsmit's Brief at 19.

Our courts have previously explained the newly discovered fact exception as follows:

> Exception (b)(1)(ii) requires petitioner to allege and prove that there were '**facts**' that were 'unknown' to him and that he could not have ascertained those **facts** by the exercise of 'due diligence.' The focus of the exception is on the newly discovered **facts**, not on a newly discovered or newly willing source for previously known facts.

*Commonwealth v. Johnston*, 42 A.3d 1120, 1128 (Pa. Super. 2012) (quoting *Commonwealth v. Marshall*, 947 A.2d 714, 720 (2008)) (internal citations and quotations omitted; emphasis supplied).

By Woldsmit's own admission, there was nothing "new" about the information contained in the Facebook messages. The messages were simply a new source indicating what was already known in 2006 – that Woldsmit's ex-wife set him up to confess his guilt. Moreover, contrary to Woldsmit's claim, these messages are not proof that the Commonwealth enlisted Woldsmit's ex-wife to set Woldsmit up to admit that he was guilty – they do not reveal any collaboration or collusion between the prosecutor and Woldsmit's ex-wife, only that Woldsmit's ex-wife set Woldsmit up to admit his guilt over the phone while in prison. Thus, this evidence does not constitute a newly discovered fact.

As Woldsmit does not satisfy any of the exceptions to the PCRA's timeliness requirements, this Court does not have jurisdiction to address the merits of the issues raised on appeal. As the PCRA court likewise was without jurisdiction to entertain the merits of Woldsmit's PCRA petition, we find no error in its dismissal of his petition without a hearing on timeliness grounds.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/10/2014