J. S54038/15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| MARIO DIAZ MALDONADO, | : | |
| | : | |
| Appellant | : | No. 745 EDA 2015 |

Appeal from the PCRA Order March 3, 2015
In the Court of Common Pleas of Northampton County
Criminal Division No(s).: CP-48-CR-0002341-1996

BEFORE: BOWES, PANELLA, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:          **FILED FEBRUARY 26, 2016**

Appellant, Mario Diaz Maldonado, appeals *pro se* from the order of the Northampton County Court of Common Pleas dismissing, as untimely, his seventh Post Conviction Relief Act[1] ("PCRA") petition. He claims (1) he established a time-bar exception under 42 Pa.C.S. § 9545(b)(1)(ii) based on an affidavit by a trial witness, Chris Mason, and (2) the PCRA court erred in failing to appoint him counsel and holding an evidentiary hearing regarding the timeliness of his petition. We affirm.

The parties are well versed in the factual and procedural history of this case. It suffices to note that the Commonwealth's evidence showed

---

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

Appellant shot the decedent, Tommy Ramirez, seven times outside of Roosevelt's Fantasy Bar in Bethlehem, Pennsylvania. The evidence at Appellant's jury trial established there was a confrontation between the decedent and Appellant inside the bar's bathroom and the shooting occurred shortly afterwards on the street outside the bar.[2] Appellant testified on his own behalf and did not deny the shooting. His trial defenses were diminished capacity, based on voluntary intoxication, and "imperfect" self-defense, and the trial court instructed the jury on those principles. **See** N.T. Trial, 5/16/97, at 890-98.

The jury found Appellant guilty of first-degree murder[3] on May 16, 1997. That same day, the trial court sentenced Appellant to life imprisonment without parole. The conviction became final on April 12, 1999.[4]

Appellant timely filed a first PCRA petition on August 18, 1999, which the PCRA court denied following a hearing. This Court affirmed the denial of

---

[2] We discuss the trial evidence in further detail below.

[3] 18 Pa.C.S. § 2502(a).

[4] **See** 42 Pa.C.S. § 9545(b)(3); U.S. Sup. Ct. R. 13 (requiring the filing of a petition for writ of certiorari within 90 days); **see also Commonwealth v. Maldonado**, 4730 Philadelphia 1997 (Pa. Super. Aug. 31, 1998) (unpublished memorandum), *appeal denied*, 0854 M.D.ALLOC. 1998 (Pa. Jan. 12, 1999).

relief on January 1, 2001.[5]  Appellant filed five subsequent PCRA petitions between April 1, 2004 and January 22, 2014, all of which were dismissed by the PCRA court.[6]  This Court affirmed the dismissal of Appellant's most recent PCRA petition, his sixth, on January 13, 2015.[7]

Ten days later, on January 23, 2015, the PCRA court received the *pro se* PCRA petition, Appellant's seventh,[8] which gives rise to this appeal. Appellant claimed he "was not aware of the favorable evidence at his [t]rial and he did not know that the prosecution was using perjured testimony." Appellant's Mem. of Law in Support of Second/Subsequent Pet. for Post-Conviction Relief, *et. seq.*, 1/23/15, at 9 (unpaginated).  He attached the affidavit of Chris Mason, who testified against Appellant at trial.  In the affidavit, Mason averred the decedent intended to rob Appellant, was in possession of a knife before the shooting, and told Appellant, "You're going to give me your shit now!"  Aff. Chris Mason, 9/20/14, at 2.  Mason asserted he did not tell the police "the whole truth" because he "wanted [Appellant]

---

[5] ***Commonwealth v. Maldonado***, 1626 EDA 2000 (Pa. Super. Jan. 4, 2001) (unpublished memorandum).

[6] ***Commonwealth v. Maldonado***, 670 EDA 2014, at 2-4 (Pa. Super. Jan. 13, 2015) (unpublished memorandum).

[7] ***Id.*** at 11.

[8] During the appeal from the dismissal of his sixth PCRA petition, Appellant filed an identical PCRA petition to the instant petition and a "motion to stay subsequent post-conviction proceedings."  The PCRA court dismissed that petition due to the pending appeal.  We therefore regard Appellant's instant PCRA petition as his seventh.

to be held responsible for [the decedent's] death without having to slander [the decedent.]" *Id.* at 3. Further, Mason indicated he told the police what they "wanted to hear" because he was on parole at the time of the shooting. *Id.* Mason noted he and Appellant were both incarcerated in the same state correctional institution, but believed Appellant did not know who he was. *Id.* at 3-4. He did not come forward earlier because he was "afraid" and decided to tell the "whole truth" due to his "guilty conscience." *Id.* at 4.

Appellant asserted he exercised due diligence in discovering Mason's alleged perjury and recantation. Appellant's Mem. of Law in Support of Second/Subsequent Pet. for Post-Conviction Relief at 9-10. He claimed he could not have been aware of the perjury or the favorable evidence until he received the affidavit on September 20, 2014. *Id.* He further suggested "there was not a shred of evidence whatsoever establishing a[n] imperfect defense" at trial. *Id.* at 10.

On February 9, 2015, the PCRA court entered a Pa.R.Crim.P. 907 notice of intent to dismiss Appellant's petition without a hearing. The court noted, "[R]ecantation testimony is extremely unreliable." Notice of Intention to Dismiss P.C.R.A. Without Hearing, 2/9/15, at 2. It also determined Appellant failed to establish a miscarriage of justice because "Mason[ ] was not the sole Commonwealth witness that testified against [Appellant] at trial" and there was other evidence establishing Appellant's specific intent to kill. *Id.* at 2-3. Appellant filed a *pro se* response to the court's Rule 907

- 4 -

notice. On March 3, 2015, the court dismissed Appellant's petition, and this timely appeal followed.[9]

Appellant presents two claims in this appeal. *See* Appellant's Brief at 4. First, he contends the PCRA court erred in dismissing his petition as untimely because "the material was neither known to nor reasonably discoverable . . . ." *Id.* He argues his "discovery" of Chris Mason's affidavit, Mason's willingness to recant his trial testimony, and his new testimony establishes a PCRA time-bar exception under 42 Pa.C.S. § 9545(b)(1)(ii). Second, he contends the PCRA court erred in failing to appoint counsel and holding an evidentiary hearing because his petition "raised substantial questions of disputed facts regarding the timeliness of his seventh/subsequent PCRA filing." *Id.* Although the PCRA court did not address fully the threshold issue of timeliness under the PCRA, our review reveals no relief is due.

The principles governing our review are well settled.

> [T]his Court's standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record.
>
> Because the PCRA time limitations implicate our jurisdiction and may not be altered or disregarded in order

---

[9] Appellant contemporaneously filed a Pa.R.A.P. 1925(b) statement with his March 11, 2015 notice of appeal. The PCRA court relied on its Pa.R.Crim.P 907 notice in lieu of a Pa.R.A.P. 1925(a) opinion.

to address the merits of a petition, we must start by examining the timeliness of [the] petition. Under the PCRA, any petition for post-conviction relief, including a second or subsequent one, must be filed within one year of the date the judgment of sentence becomes final, unless [an exception] set forth in 42 Pa.C.S. § 9545(b)(1)(i)-(iii) applies:

**(b) Time for filing petition.—**

(1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

\* \* \*

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence[.]

\* \* \*

42 Pa.C.S. § 9545(b)(1)[(ii)]. Any petition attempting to invoke one of these exceptions "shall be filed within 60 days of the date the claim could have been presented."

***Commonwealth v. Davis***, 86 A.3d 883, 887-88 (Pa. Super. 2014) (some citations omitted). "[W]e may affirm the decision of the [PCRA] court if there is any basis on the record to support the [PCRA] court's action; this is so even if we rely on a different basis in our decision to affirm." ***Commonwealth v. Blackwell***, 936 A.2d 497, 499 (Pa. Super. 2007) (citation omitted).

"[S]ubsection (b)(1)(ii) is a limited extension of the one-year time requirement under circumstances when a petitioner has not had the review

- 6 -

to which he was entitled due to a circumstance that was beyond his control." *Commonwealth v. Bennett*, 930 A.2d 1264, 1273 (Pa. 2007). To plead the exception, the petitioner bears the burden of showing that "facts were 'unknown' to him and that he could not uncover them with the exercise of 'due diligence.'" *Id.* at 1274.

"The focus of the exception is 'on [the] newly discovered **facts**, not on a newly discovered or newly willing source for previously known facts.'" *Commonwealth v. Johnston*, 42 A.3d 1120, 1128 (Pa. Super. 2012) (citation omitted). "Due diligence demands that the petitioner take reasonable steps to protect his own interests. A petitioner must explain why he could not have learned the new fact(s) earlier with the exercise of due diligence." *Commonwealth v. Brown*, 111 A.3d 171, 176 (Pa. Super.) (citation omitted), *appeal denied*, 125 A.3d 1197 (Pa. 2015). However, "[d]ue diligence does not require a defendant to make such unreasonable assumptions." *Davis*, 86 A.3d at 890-91 (citation omitted). "It is the petitioner's burden to plead and prove an exception to the PCRA-timeliness rule." *Blackwell*, 936 A.2d at 500 (citation omitted).

In *Commonwealth v. Marshall*, 947 A.2d 714 (Pa. 2008), the petitioner filed a PCRA petition on January 27, 2006, challenging his conviction entered following a 1984 trial and a 1990 resentencing proceeding. *Marshall*, 947 A.2d at 717. He claimed he possessed "newly-discovered evidence demonstrat[ing] a policy of racial discrimination in jury

selection within the Philadelphia District Attorney's office," namely, notes taken by Gavin Lentz during a 1990 lecture by Bruce Segal. *Id.* He asserted he was "unable to obtain a copy of Mr. Lentz's notes, or even to learn the identity of the notes, until November 28, 2005." *Id.* at 718. The PCRA court dismissed the petition as untimely. *Id.*

The Pennsylvania Supreme Court affirmed, reasoning:

> The after-discovered "fact" on which [the petitioner] relies is the contention, based on the Sagel and McMahon lectures, of a policy of racial discrimination in jury selection in the District Attorney's Office. The investigative report that discussed both lectures and concluded therefrom that a discriminatory policy was extant in the District Attorney's Office, was published in Philadelphia Magazine in June 1997, and thus was public knowledge prior to the filing of [the petitioner's] supplemental petition on October 24, 1997, in support of his first request for PCRA relief, some eight years before [the petitioner] filed the instant PCRA petition. Contrary to [the petitioner's] assertion, Mr. Lentz's lecture notes are properly characterized as another source for the claim of a racially discriminatory policy in jury selection in the District Attorney's Office.

*Id.* at 721.

In **Johnston**, the petitioners filed PCRA petitions on May 14, 2009, from their convictions for, *inter alia*, several first-degree murder convictions entered following a 1980 jury trial and sentencing hearings in 1983. **Johnston**, 42 A.3d at 1124. The petitioners claimed a book "released in March of 2009 and obtained by them in April 2009" contained previously unknown evidence. *Id.* at 1126. In relevant part, the petitioners relied on information that another individual, Leslie Dale, confessed to killing one of

the victims. *Id.* at 1127. The PCRA court appointed counsel for petitioners, but subsequently granted counsels' motions to withdraw and dismissed the petitions. *Id.* at 1125.

This Court affirmed the PCRA court's orders in *Johnston*. *Id.* at 1130. The *Johnston* Court noted two witnesses testified that Dale confessed to killing the victim at the 1980 trial. *Id.* at 1127. The Court emphasized that the

> "newly discovered evidence" is directed at discrediting the same witness, under the same theory, and with the same facts as had occurred during the course of the trial. The only difference this Court can ascertain is that yet another witness may have been available to testify to say that Leslie Dale had confessed to killing [one of the victims].

*Id.* at 1128. The Court thus regarded the petitioners' claims of previously unknown evidence as "but another conduit for or new source of previously known facts," *id.* at 1129, and concluded:

> [b]ecause the factual assertion that Leslie Dale confessed to the killing of [one of the victims] is not new, and because the information contained in the book is merely cumulative evidence to what was known by the defense at the time of trial, we agree with the PCRA court that evidence of an additional confession by Dale to an additional person does not present an exception within the meaning of 42 Pa.C.S. § 9545(b)(1)(ii).

*Id.* at 1127.

In *Davis*, the petitioner filed a PCRA petition thirty-six years after his conviction. *Davis*, 86 A.3d 885-86. He claimed two trial witnesses testified against him pursuant to undisclosed agreements with the Commonwealth

and that one of the witnesses committed perjury. *Id.* In relevant part, the petitioner, in 2008 and 2011, received affidavits from one of the witnesses, Jerome Watson, in which Watson indicated he "lied in his testimony" at trial and obtained favorable treatment in his own outstanding cases. *Id.* at 886, 888. The PCRA court dismissed the petition as untimely filed. *Id.* at 886.

In the appeal in *Davis*, this Court vacated the order dismissing the petition and remanded the matter for an evidentiary hearing. *Id.* at 891-92. We observed both Watson and the other witness "denied having made any deals with the Commonwealth at trial" and the Commonwealth did not "interject to clarify that a deal or leniency had been offered." *Id.* at 890. We also noted the petitioner "proffered affidavits from several friends and family members who claimed that they attempted to locate Watson after [his] trial in order to convince Watson to admit that he lied on the stand." *Id.* at 891. Because "Watson ostensibly could not be found[, the petitioner] had no proof of Watson's perjury until he received Watson's affidavit in March of 2008." *Id.* Thus, we concluded the petitioner adequately pleaded a time-bar exception under 42 Pa.C.S. § 9545(b)(1)(ii). *Id.*

Instantly, there is no dispute Appellant's seventh PCRA petition is facially untimely. *See* 42 Pa.C.S. § 9545(b)(1), (3). Thus, we must consider Appellant's claim that his discovery of previously unknown facts—namely, Chris Mason's affidavit and his allegations of perjury and willingness to recant—established a time-bar exception. *See Davis*, 86 A.3d at 887-88;

*Blackwell*, 936 A.2d at 499. In so doing, we examine the trial record to assess whether the factual allegations set forth in Mason's affidavit were previously unknown. *See Johnston*, 42 A.3d at 1127.

By way of background, the Commonwealth adduced the following evidence regarding the area surrounding the bar. The bar was at 401-403 East Fourth Street. N.T. Trial, 5/13/97, at 466. A fire station was at 419 East Fourth Street. *Id.* The distance between the front of the bar and the fire station was 160 to 170 feet. *Id.* at 469-470. It was undisputed that the truck Appellant drove to the bar was in an area referred to as the CRs Market parking lot. *Id.* The shooting occurred in the area in front of the bar in the early morning hours of May 3, 1996.

A Commonwealth witness, Nicole Clark, testified she was standing in front of the driveway of the fire station when she saw Appellant exit the bar. *Id.* at 272. According to Clark, Appellant exited the bar, crossed Fourth Street and walked toward "CRs' parking lot." *Id.* at 272. She testified she heard Appellant say, "'I'm going to kill this sucker right now.'" *Id.* at 273. He walked to a red truck in the parking lot and then "walk[ed] across the street" back to the bar. *Id.* at 272-73, 275. According to the Commonwealth, Clark indicated that Appellant returned to the bar "crossing East Fourth Street in [her] direction from the south side to the north side." *Id.* at 276. As Appellant returned to the area of the bar, several people

exited, including the decedent.[10]  *Id.* at 276-77.  Clark testified Appellant "proceeded into the crowd" and immediately before the shooting, "there was words between [Appellant and the decedent.]"  *Id.* at 278.  Clark testified the decedent stated "that he did not want any problems."  *Id.*  Appellant replied, "'You don't want no problems now?'" and fired as the decedent "started to try and walk away."  *Id.* at 278-79.

During cross-examination, Appellant's counsel confirmed Appellant "walked in front of [Clark's] path on the sidewalk" when returning to the bar from the parking lot.  *Id.* at 291.  Counsel represented the distance from the bar to the driveway of the fire station where Clark was standing was seventy-five yards.  *Id.* at 289.  Counsel also elicited Clark's concession that "four or five of [the decedent's] black friends" were "kind of surrounding" Appellant and that it was a "five on one" situation.  *Id.* at 294.  Jennette Cruz, who was with Clark at the time, also testified Appellant was facing decedent and several of decedent's friends were standing behind Appellant.[11]  *Id.* at 343.

---

[10] Nicole Clark testified she was unaware that the decedent was in the crowd at the time of the shooting.  N.T. Trial, 5/13/97, at 282.  Clark was the decedent's "foster cousin."  *Id.* at 282.  She gave a statement to police on July 24, 1996.  *Id.* at 283.

[11] Jennette Cruz was also unaware that the decedent had been shot that night, but learned it was decedent the next day.  *Id.* at 324.  Cruz was Clark's cousin and her step-aunt was the decedent's foster mother.  *Id.* at 342.  She gave a statement to police on August 6, 1996.  *Id.* at 345.

Chris Mason testified that he went to the bar with the decedent, and several other friends, whose names and nicknames were known to Appellant by the time of trial.[12] Mason testified he first met Appellant in the bathroom of the bar. N.T. Trial, 5/14-15/97, at 491. According to Mason, there was "some kind of minor argument." *Id.* at 492. "After that," Appellant and another person, who was acting as a translator, came into the bathroom. *Id.* "[T]he translator was translating what he was saying, which I guess it was he wanted to fight." *Id.* Mason told the decedent, "'Look . . . we're not fighting. I just got out of jail myself and I didn't come here for that.'" *Id.*

Shortly thereafter, Mason, the decedent, and two of their friends were on the steps outside the bar when they saw Appellant approaching them "from the fire station." *Id.* at 493. The decedent "panicked and ran into the street." *Id.* at 494. Mason described the shooting as follows. Appellant "cut in between two cars, turned to [the decedent] as he was running, [and] shot one time. After he shot the one time, [the decedent] fell. He ran up over the top of him, [and] shot him about six more times." *Id.* at 495. Mason was the only Commonwealth witness to testify regarding the events inside the bar's bathroom and outside of the bar at the time of the shooting.

---

[12] N.T. Trial, 5/14-15/97, at 491 (identifying the decedent's and Mason's companions as James Reimert and Terrence Roderick), 497 (indicating Appellant's counsel cross-examined Mason regarding Roderick's nickname "T" and eliciting Mason's testimony that Dennis Riddick, Brian Roderick, and Robert Craig were also at the bar with Mason and the decedent).

On cross-examination, Mason acknowledged he was twenty years old and on parole for theft at the time of the shooting and the decedent was also "underage." *Id.* at 497, 499, 501. He acknowledged that his friends were in the bathroom during the confrontation between Appellant and the decedent. *Id.* at 505. Mason denied hearing his friends saying anything about trying to get Appellant's jewelry. *Id.* at 507. He testified that to his knowledge, none of his friends were armed that night. *Id.* at 505. Appellant's counsel also challenged Mason's description of the shooting, noting it was inconsistent with the testimony of Clark and Cruz that there was a confrontation between Appellant and the decedent before the shooting. *Id.* at 509-11.

Appellant testified he drove his uncle's truck to the bar. In support of his diminished capacity defense, he testified he consumed alcohol, marijuana, cocaine, and Valium, on the day and evening of the shooting. *Id.* at 679, 682-83, 685. Dr. John Shane, M.D., testified as an expert in Appellant's defense and opined Appellant "was in a world of hallucination, a world of confusion, a world where the individual cannot reason." N.T. Trial, 5/16/97, at 760. Doctor Shane concluded Appellant "was not able to formulate an intent to commit a crime." *Id.* at 761

Additionally, Appellant emphasized he was wearing gold and diamond jewelry at the bar. N.T. Trial, 5/14-15/97, at 681-82. He described the confrontation with the decedent and the decedent's friends in the bathroom

as follows. After playing pool, he went to the bathroom. *Id.* at 688. He testified, "Suddenly, when I was about to leave, about five or six [people] came in. . . . They surrounded me, and told me it was a hold up; and [the decedent] pushed me and punched me." *Id.* at 688-89. Appellant ran out of the bar. He told the jury, "I was scared. [The decedent] had threatened me with death." *Id.* at 689. He ran to his uncle's truck and "took the weapon out to protect [him]self." *Id.* at 690. As to the shooting, he testified he remembered firing once and did so because "[t]hey had threatened me and they were converging upon me . . . when I was walking on the sidewalk. They were surrounding me, and I just shot." *Id.* at 690-91. He did not remember shooting the decedent when the decedent was on the ground. *Id.* at 691. On cross-examination, Appellant could not explain why he went back to the bar after going to his uncle's truck and retrieving the handgun. He testified, "I was walking. I don't really know. I don't know how I got over there." *Id.* at 698.

Following our review, we find the trial record belies Appellant's claim he "was not aware of the favorable evidence at his [t]rial and he did not know that the prosecution was using perjured testimony." *See* Appellant's Mem. of Law in Support of Second/Subsequent Pet. for Post-Conviction Relief, at 9. Appellant unequivocally testified he was "held up" and assaulted in the bathroom of the bar. N.T., 5/14-15/97, at 688-89. He was on notice at trial that Mason's testimony was inconsistent with his own

version of the events leading to the shooting, as well as the testimony of other witnesses. ***Id.*** at 509-10.

Similarly, the record contradicts Appellant's assertion that "there was not a shred of evidence whatsoever establishing a[n] imperfect defense" at trial. Appellant's Mem. of Law in Support of Second/Subsequent Pet. for Post-Conviction Relief at 10. Appellant ignores his own testimony and the fact that both self-defense and imperfect self-defense instructions were given at trial.

Thus, we discern no merit to arguments that his seventh petition raised issues of material fact as to its timeliness. In light of the foregoing, we conclude Mason constitutes a newly willing source of previously known facts. As such, the allegations set forth in his affidavit do not establish a timeliness exception under 42 Pa.C.S. § 9545(b)(1)(ii). ***See Johnston***, 42 A.3d at 1128.

Even if we assume Appellant established a time-bar exception, however, we would conclude that no relief is due.

It is well-settled that

> To prevail on a justification defense, there must be evidence that the defendant "(a) . . . reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force against the victim to prevent such harm; (b) that the defendant was free from fault in provoking the difficulty which culminated in the slaying; and (c) that the [defendant] did not violate any duty to retreat." "The Commonwealth sustains its burden [of disproving self-defense] if it proves any of the following: that the slayer

was not free from fault in provoking or continuing the difficulty which resulted in the slaying; that the slayer did not reasonably believe that [he] was in imminent danger of death or great bodily harm, and that it was necessary to kill in order to save [him]self therefrom; or that the slayer violated a duty to retreat or avoid the danger."

The derivative and lesser defense of imperfect belief self-defense "'is imperfect in only one respect—an unreasonable rather than a reasonable belief that deadly force was required to save the actor's life. All other principles of justification under 18 Pa.C.S. § 505 must [be satisfied to prove] unreasonable belief voluntary manslaughter.'" Thus, for example, if the defendant was not free from fault, neither self-defense nor imperfect self-defense is a viable defense.

***Commonwealth v. Sepulveda***, 55 A.3d 1108, 1124-25 (Pa. 2012) (citations and footnote omitted).

Instantly, Appellant cannot explain his return to the area in front of the bar after he was assaulted inside the bar, traversed more than 170 feet to his uncle's vehicle, retrieved the firearm, and returned the same distance to the area in front of the bar. Similarly, there is no reasonable explanation why the seven gunshot wounds to the decedent had trajectories from the back toward the front of the decedent's body. None of Appellant's evidence or alleged previously unknown evidence rebuts the trial evidence that he fired once when the decedent was standing, then fired six more times when the decedent was on the ground.

Thus, we discern no reasonable possibility that a jury would find that Appellant was free from fault when continuing the difficulties leading to the shooting or that he did not violate a duty to retreat. ***See id.*** at 1124-25.

Moreover, there was ample evidence supporting the conviction based on Appellant's specific intent to kill the decedent. Consequently, even accepting the factual allegations in Chris Mason's affidavit as true and viewing the trial evidence in a light favorable to Appellant, we discern no legal basis to conclude Appellant would have established a basis for an acquittal or a reduction of conviction from first-degree murder to voluntary manslaughter.

Lastly, because we find no issues of material fact raised by Appellant in his seventh PCRA petition, we detect no abuse of discretion or error in the PCRA court's decision to dismiss the petition without appointing counsel or holding an evidentiary hearing. ***See*** Pa.R.Crim.P. 904(D)-(E), 907(2); ***Commonwealth v. Burton***, 121 A.3d 1063, 1067 (Pa. Super. 2015) (*en banc*); ***Commonwealth v. Kubis***, 808 A.2d 196, 200 (Pa. Super. 2002).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/26/2016