J-S71013-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PATRICIA LYNNE RORRER | : | |
| | : | |
| Appellant | : | No. 1640 EDA 2019 |

Appeal from the PCRA Order Entered May 17, 2018
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s): CP-39-CR-0002176-1997

BEFORE: BOWES, J., MURRAY, J., and McLAUGHLIN, J.

MEMORANDUM BY BOWES, J.: **FILED APRIL 22, 2020**

Patricia Lynne Rorrer appeals the PCRA court's dismissal of her fifth

PCRA petition as untimely filed. We affirm.

We previously summarized the factual history of this case as follows:

> Appellant is the former girlfriend of Andrew Katrinak. On
> December 12, 1994, [A]ppellant telephoned the Katrinak
> residence, where Andrew lived with his wife, Joann, and their
> infant son, Alex. Joann told [A]ppellant never to call there again.
> Three days later, Joann and the baby disappeared. Their bodies
> were discovered in a wooded area where [A]ppellant once stabled
> and rode her horses. The results of an autopsy established that
> Joann had been beaten and shot in the face with a .22 caliber
> handgun. The cause of death of the baby could not be determined
> conclusively. His death was the result of either suffocation or
> exposure to the elements. Following an extensive two-year police
> investigation, [A]ppellant was arrested at her home in North
> Carolina and charged with kidnapping and murder.

*See Commonwealth v. Rorrer*, 748 A.2d 776 (Pa.Super. 1999) ("***Rorrer***

***I***") (unpublished memorandum), *appeal denied*, 757 A.2d 931 (Pa. 2000).

Notably, the police investigation included DNA testing of hairs found at the crime scene on the back of the headrest of the driver's seat (hereinafter referred to as "the seatback hairs"). Testing results indicated that Appellant could not be excluded as a contributor to the seatback hairs.

On March 9, 1998, a jury found Appellant guilty of two counts each of first-degree murder and kidnapping. Appellant was sentenced to two terms of life imprisonment on the first-degree murder charges, followed by two consecutive ten-to-twenty-year terms of imprisonment for the kidnapping convictions. Appellant filed a post-sentence motion, asserting 105 claims of ineffective assistance of trial counsel and numerous claims of trial court error. The trial court held multiple hearings, denied the motions, and authored an opinion addressing all of the issues. On direct appeal, Appellant presented four ineffectiveness claims, which we rejected. **See Rorrer I**, **supra**. Our Supreme Court also denied her petition for allocatur on April 11, 2000.

Appellant filed a timely PCRA petition, which was denied. On appeal, Appellant averred that direct appeal counsel was ineffective for not pursuing all 105 claims of trial counsel's ineffectiveness that were included in the post-sentence motion. We rejected that argument and affirmed the denial of PCRA relief. **See Commonwealth v. Rorrer**, 844 A.2d 1288 (Pa.Super. 2003) ("**Rorrer II**") (unpublished memorandum).

On June 27, 2005, Appellant filed a petition pursuant to 42 Pa.C.S. § 9543.1, which governs procedures for a person convicted of a criminal offense

and serving a jail term to obtain forensic DNA testing on specific evidence. Appellant argued that further DNA testing, using the more reliable DNA technologies now available, would exonerate her of the murders. A hearing on the DNA testing claim was held, at which both sides agreed that the recovered seatback hairs belonged to the killer and that the chain of custody of those hairs was not in question since they were mounted right after they were found. N.T. Hearing, 12/1/06, at 60.

The court entered an order compelling the Commonwealth to preserve the seatback hairs and other items, and authorized a DNA expert to review the DNA testing conducted prior to trial. The expert was to determine if new DNA testing procedures now existed which could yield more accurate results. The court also gave notice of its intent to dismiss all allegations pertaining to the chain of custody of the hair samples. The items were sent for inspection to Appellant's choice of lab, Orchid Cellmark, and in October of 2007, the Commonwealth agreed to allow nuclear DNA testing of a fingernail fragment, the seatback hairs, and a cigarette butt. Test results of one of the seatback hairs revealed that it belonged to Appellant. The laboratory was unable to recover material from the fingernail that could be tested, and no other items were DNA tested. Appellant requested mitochondrial DNA testing on the fingernail, which the Commonwealth opposed and the court denied.

After the DNA results were admitted into evidence, defense counsel renewed the chain of custody issue, arguing that the Commonwealth failed to

establish a reliable chain of custody for the seatback hairs tested by Orchard Cellmark. The Commonwealth countered that the chain of custody issue had already been dismissed by the court's order of March 15, 2007, based on the stipulation of the parties. Moreover, the Commonwealth contended that it offered evidence at trial that established a reliable chain of custody as to the forensic items.

While the DNA petition was still being litigated, Appellant filed a second PCRA petition claiming that the Commonwealth intentionally withheld exculpatory evidence consisting of a statement that Walter Traupman gave to police. Since Mr. Traupman's original statement was not available, the PCRA court allowed Mr. Traupman to be deposed. At his deposition, Mr. Traupman claimed that he witnessed a fight between the victim and her husband on a public street on December 15, 1994, and that, when he went to the police barracks to tell them, a police officer pushed him out of the door, "shoved him down the steps," and injured his neck. N.T. Deposition, 7/27/06, at 9. The PCRA court denied Appellant's petition, concluding that Mr. Traupman's deposition did not warrant the grant of a new trial in light of the DNA evidence against Appellant. Appellant did not file an appeal.

On August 24, 2012, Appellant filed her third PCRA petition. In this petition, she asserted entitlement to additional DNA testing of the fingernail fragment as on the basis that she had just discovered that the Commonwealth had tampered with it. Appellant, who was thirty-three years old when she

committed the murders, also asserted that she was entitled to relief under *Miller v. Alabama*, 567 U.S. 460 (2012)(holding "that mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'"). The PCRA court denied relief and on appeal, we affirmed. *Commonwealth v. Rorrer*, 93 A.3d 508 (Pa.Super. 2013) ("*Rorrer III*") (unpublished memorandum), *appeal denied*, 92 A.3d 811 (Pa. 2014).

On September 24, 2015, Appellant filed her fourth PCRA petition with the assistance of counsel. In this petition, Appellant alleged that the hair analysis testimony offered at her 1998 trial was unreliable and would be inadmissible under current professional standards; that the Pennsylvania State Police deliberately placed her exemplar hairs on the slides that were sent to the FBI and then, post-conviction, to an independent lab for DNA testing; that she had after-discovered evidence in the form of Catasauqua Police Officer Joseph Kicska, who was one of the responders to Mr. Katrinak's home after Joann was reported missing, and who told Joseph York that he lied at trial when he said that an exterior door to the victim's home was pried open; and that the Commonwealth withheld exculpatory evidence when it failed to provide her with the statements that Mr. Trautman made to police. On December 11, 2015, the PCRA court issued notice of its intent to dismiss the petition without a hearing. After counsel filed an amended petition and motion to inspect and copy documents, the Commonwealth filed a motion to

strike portions of Appellant's amended petition. On May 26, 2016, after entertaining oral argument on the timelines of the petition, the PCRA court dismissed it as untimely.

On appeal, we affirmed the dismissal of Appellant's fourth PCRA petition, finding that the record categorically belied Appellant's arguments. *Commonwealth v. Rorrer*, 179 A.3d 605 (Pa.Super. 2017) ("*Rorrer IV*") (unpublished memorandum). First, we found that Appellant's claim that her exemplar hairs were switched for the seatback hairs had been previously litigated in her third PCRA petition. Further, this conspiracy theory was discredited by the record, which established that the slides were sent to the FBI before Appellant's exemplar hairs were secured. Following our decision, Appellant filed a petition for allowance of appeal in the Supreme Court, which was denied. *Commonwealth v. Rorrer*, 179 A.3d 605 (Pa. 2018).

While Appellant's petition for allocatur was pending, Appellant filed a fifth petition for PCRA relief citing newly-discovered evidence. She alleged that she had uncovered new evidence in the form of a letter from the trial prosecutor indicating definitively, for the first time that the FBI report that was the subject of her fourth PCRA petition, was never in the Commonwealth's possession. Because the fourth PCRA petition was still pending in our Supreme Court, the PCRA court issued a Rule 907 notice. Appellant filed a response indicating that she filed the petition while the fourth PCRA was still pending in order to ensure that she timely raised her claim and that the PCRA

court should hold the petition in abeyance until the litigation of her fourth PCRA petition was complete. The Commonwealth filed a motion to dismiss and, after issuing a Pa.R.Crim.P. 907 notice and after the Supreme Court denied allocatur on the fourth PCRA petition, the PCRA court dismissed Appellant's fifth PCRA petition.

Appellant filed a "notice of reconsideration or notice of appeal to the Superior Court." The PCRA court denied the motion and ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant complied, responding with a concise statement of matters complained of on appeal and also filed a "motion to correct record including appellate record," alleging that the October 26, 2017 Superior Court memorandum contained a litany of factual inaccuracies that were derived either from a misleading 2009 PCRA court opinion, or from improper communication between the Commonwealth and the Superior Court. She further argued that these inaccuracies had obstructed her access to a fair appellate process. The PCRA court treated the motion as a sixth PCRA petition and entered an order giving notice of its intent to dismiss the petition. Appellant filed a response to the notice, and on July 27, 2018, the PCRA court dismissed Appellant's sixth PCRA petition. Appellant filed a "notice of intent to appeal" dismissal of her motion to correct the record. However, she did not perfect the appeal by filing an actual notice of appeal, and no further action was taken by the PCRA court.

Meanwhile, Appellant filed a petition for a writ of *habeas corpus* in federal court. As a result, the federal court ordered the Commonwealth to provide a status report on any pending state court cases. During its investigation of the status of Appellant's case, the Commonwealth became aware of the unresolved filings regarding the fifth PCRA and motion to correct the record. The Commonwealth contacted Appellant and stated that it would not object to a *nunc pro tunc* reinstatement of her appellate rights with respect to both filings. Hence, Appellant's appellate rights were reinstated and this *nunc pro tunc* appeal followed. Both Appellant and the PCRA court complied with the mandates of Rule 1925.

Appellant raises the following issues for our review:

1. Did the honorable trial court err, and abuse [its] discretion, when denying [Appellant's] "motion to correct the record" without an evidentiary hearing?

2. Did the honorable trial court show clear and obvious bias and prejudice against [Appellant], thereby violating her due process rights because:

    a. [It] disregarded and refused to address her appeals until ordered to do so by a magistrate judge;

    b. [It] interfered with her appellate process by instructing her to follow procedure they knew to be incorrect;

    c. [It] deliberately ignored her appellate rights.

3. Did the Honorable trial court violate [Appellant's] rights, due process rights and right to a fair trial by:

a. Failing to investigate and correct errors in her record after they and their officers were provided with documentation proving those errors?

b. Allowing her to be judged on facts [it] and [its] officer know to be untrue?

c. Refusing to review and correct these erroneous facts thereby tying the hands of the higher courts and causing years of irreversible damage?

4. Did the honorable trial court, and [its] officers, show clear and obvious bias against petitioner, thereby violating her appellate rights, right to a fair and impartial review of her case and right to due process by:

a. Failing to investigate why the PA Superior Court added additional false facts to [Appellant]'s DNA record;

b. Failing to inform the PA Superior Court of those errors and;

c. Repeating those errors as fact despite knowing they are untrue?

5. Did the honorable trial court err and abuse [its] discretion, by denying [Appellant] an evidentiary hearing on her PCRA on newly discovered evidence and a *Brady* violation, thereby violating her constitutional right to due process, a fair trial and her right to confront witnesses since former A.D.A. Michael McIntyre could verify that:

a. The "no roots attached" report is an authentic FBI report;

b. He knows the identity of the FBI agent who wrote the report;

c. He has spoken to the FBI agent who wrote the report;

d. The "no roots attached" report was never handed over to the defense.

6. Did the honorable trial court err in holding [Appellant] to a higher standard than [its] own officers in the use of due diligence?

Appellant's brief at 9-11.

Our standard of review examines "whether the PCRA court's determination is supported by the evidence of record and free of legal error. We grant great deference to the PCRA court's findings, and we will not disturb those findings unless they are unsupported by the certified record." *Commonwealth v. Holt*, 175 A.3d 1014, 1017 (Pa.Super. 2017).

We first turn to the time limits imposed by the PCRA, as they implicate our jurisdiction to address any and all of Appellant's claims. *Commonwealth v. Chester*, 895 A.2d 520, 522 (Pa. 2006). In order to be timely, a PCRA petition must be filed within one year of the date that the judgment of sentence becomes final. 42 Pa.C.S. § 9545(b)(1). "This time constraint is jurisdictional in nature, and is not subject to tolling or other equitable considerations." *Commonwealth v. Spotz*, 171 A.3d 675, 678 (Pa. 2017) (citation omitted). The time bar can "only be overcome by satisfaction of one of the three statutory exceptions codified at 42 Pa.C.S. § 9545(b)(1)(i)-(iii)." *Id*.

Appellant alleges that she has uncovered newly-discovered facts which exonerate her. *See* Appellant's brief at 22. When considering a claim seeking to invoke the newly-discovered-fact exception, our Supreme Court requires

- 10 -

that a petitioner establish that: "(1) the facts upon which the claim was predicated were unknown[,] and (2) they could not have been ascertained by the exercise of due diligence." **Commonwealth v. Cox**, 146 A.3d 221, 227 (Pa. 2016) (citation omitted). Due diligence demands that the petitioner take reasonable steps to protect her own interests. **Commonwealth v. Carr**, 768 A.2d 1164, 1168 (Pa.Super. 2001). This rule is strictly enforced. **Commonwealth v. Monaco**, 996 A.2d 1076, 1080 (Pa.Super. 2010). Additionally, the focus of this exception "is on the newly discovered facts, not on a newly discovered or newly willing source for previously known facts." **Commonwealth v. Marshall**, 947 A.2d 714, 720 (Pa. 2008).

Appellant concedes that her petition is untimely, but asserts that she has newly discovered evidence in the form of a portion of a letter written from the trial prosecutor to Tammy O'Reilly[1] and received on February 19, 2018, after Ms. O'Reilly filed a request under the Freedom of Information Act (FOIA). **See** Appellant's brief at Exhibit B. The letter indicates that the Commonwealth did not have the FBI report pre-trial, but received it after Ms. O'Reilly filed a request under the Freedom of Information Act (FOIA) in 2015. **Id**. She alleges that the letter and FBI report itself support her claim that the Pennsylvania State Police (PSP) or their DNA lab fabricated evidence by switching the seatback hairs recovered from the crime scene with Appellant's

_____

[1] Tammy O'Reilly is a true-crime author who sought out the information from the FBI while researching a book she was writing about Appellant's case.

- 11 -

own exemplar hairs, fraudulently implicating her in the murders. *Id*. at 20. Importantly, Appellant previously litigated this theory of switched seatback hairs in her fourth PCRA petition, which was dismissed as untimely, in part, because the PCRA court found that Appellant failed to show the necessary due diligence in order to overcome the PCRA time bar. *See Rorrer IV*, *supra*. Appellant alleges that the letter shows that she did in fact exercise the necessary due diligence, because she managed to uncover something that the Commonwealth had not discovered.

The Commonwealth responds that the fact that the prosecuting attorney did not have the FBI reports at the time of trial does nothing to alter the PCRA court's prior conclusion that Appellant failed to satisfy the due diligence requirement of the PCRA time bar. *See* Commonwealth's brief at 20. Appellant was aware of the underlying fact that DNA testing was conducted by the FBI pre-trial, yet she did not attempt to obtain these reports through an FOIA request until 2015. Therefore, the fact that Appellant has now uncovered a new source to attempt to re-litigate the same substantive issue does nothing to explain why she waited until 2015 to file the FOIA request. *Id*. The PCRA court agreed with the Commonwealth's argument and concluded that Appellant's fifth petition was "duplicative [of her fourth PCRA petition] and did not satisfy any of the exceptions to the timeliness requirements of the PCRA." PCRA Court Opinion, 7/23/19, at unnumbered 10. We agree.

Appellant alleges that this issue was not previously litigated because she did not previously have the letter. **See** Appellant's brief at 22. However, she misunderstands what the newly discovered facts actually are. As the PCRA court explained, the facts at issue are whether the chain of custody of the seatback hairs from the crime scene were erroneously replaced with Appellant's exemplar hairs, tainting the resulting DNA tests. **See** PCRA Court Opinion, 7/23/19, at unnumbered 10. The letter does not inform that issue. Moreover, Appellant previously raised this exact allegation in her fourth PCRA petition.

Consequently, we reject Appellant's attempt to tailor her previously litigated newly-discovered-fact analysis as separate and distinct from that raised in her fourth PCRA petition by linking this petition to her 2018 discovery of a letter. The fact that Appellant has discovered yet another conduit for the same allegations of taint does not transform her latest source into evidence falling within the ambit of § 9545(b)(1)(ii). **See Marshall**, **supra** at 720. Accordingly, we find that the PCRA court did not err when it dismissed Appellant's fifth PCRA petition as untimely.[2]

---

[2] Appellant also challenges the accuracy of the record. Specifically, she attacks a previous memorandum, wherein this Court stated that "Orchid reported that all six seatback hairs belonged to Appellant and that the cigarette butt contained Appellant's DNA." **Rorrer IV**, **supra**. The Commonwealth concedes that Appellant is correct that Orchid did not test the cigarette butt. **See** Commonwealth's brief at 25. However, this inaccuracy had no impact upon our affirmance of the dismissal of Appellant's petition on jurisdictional grounds. Accordingly, no relief is due.

Order affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 4/22/2020*