J-S52044-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AMIN VICKS | : | |
| | : | |
| Appellant | : | No. 2525 EDA 2019 |

Appeal from the PCRA Order Entered July 29, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0009794-2008

BEFORE:   PANELLA, P.J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                **FILED DECEMBER 04, 2020**

Appellant, Amin Vicks, appeals from the July 29, 2019, order entered in the Court of Common Pleas of Philadelphia County dismissing his third petition filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546, without an evidentiary hearing.  After a careful review, we affirm.

The relevant facts and procedural history are as follows: Andre Russell was shot and killed, and the police discovered his body in his vehicle, which was parked at 29th and Chalmers Streets in Philadelphia.  Appellant was arrested in connection with the killing, and on September 13, 2010, Appellant, who was represented by counsel, entered a negotiated guilty plea to the

_____

[*] Former Justice specially assigned to the Superior Court.

charges of third-degree murder, robbery, criminal conspiracy, kidnapping for ransom, arson, and firearms not to be carried without a license.[1]

At the guilty plea hearing, the Commonwealth set forth the facts underlying Appellant's plea as follows:

> **[ADA]:** On January 19th of 2008, at approximately 7:50 in the evening, near the 2800 block of West Huntington Street, in the City and County of Philadelphia, [Appellant], and his two coconspirators, Saheed Saunders and Maurice Stokes, approached the victim, Andre Russell.
>
> [Appellant] had a gun and pointed it at Mr. Russell. Mr. Russell had accepted $400 from [Appellant] prior to this and had not delivered drugs to him, and so [Appellant] approached him as a result of that.
>
> While he held the gun on Mr. Russell, Saheed Saunders and Maurice Stokes went through Mr. Russell's pockets, taking money as well as his wallet.
>
> [Appellant] then ordered Mr. Russell in the third row of an SUV at gunpoint and passed the gun off to Mr. Saunders. Mr. Saunders then got into the third row and Mr. Stokes got into the front passenger seat.
>
> At this point the trio, in agreement, drove Mr. Russell around the area of West Huntingdon Street and had him call home to his wife asking for money, trying to get more money from various people, demanding money from him.
>
> Ultimately they took him to 2901 North 29th Street, which is essentially 29th and Chalmers, behind the North Penn Rec Center, where they continued to demand money from him. [Appellant] and Mr. Saunders pistol whipped him.
>
> Mr. Stokes got out and looked in the trunk for more money. And they stepped about 15 to 20 feet away, when Mr. Russell said something. Mr. Saunders, who had the gun, went back, listened to what he was saying, went back to his coconspirators,

---

[1] 18 Pa.C.S.A. §§ 2502(c), 3701(a)(1), 903(a)(1), 2901(a)(1), 3301(a)(1), and 6106, respectively. The Commonwealth *nolle prossed* all remaining charges.

[Appellant] and Mr. Stokes, had a conversation, walked back to the SUV, lifted up the hatch, and put two bullets in him.

**THE COURT:** And that was done by who?

**[ADA]:** Mr. Saunders. One of the bullets went through his back, piercing both of his lungs and also his aorta, killing him.

[Appellant], Mr. Saunders, and Mr. Stokes got into the vehicle of Mr. Dennis Johnson, who had been following them and was their getaway drive car, and they went back and split the money up. They each got about $175 for this.

At that point, [Appellant], with his coconspirators, were driving by—this was actually Martin Luther King Junior weekend, so the rec center was closed on Monday—so they were driving by and the car was still there.

So, ultimately, [Appellant] and Mr. Stokes went back to the car, they poured gasoline in the front seat, [this] is where the arson dog, Portia, hit off the accelerant, and they set the car on fire.

They closed the doors, though. So, there wasn't enough oxygen. So, it burned out. It did not burn the body of Mr. Russell, but it was still an arson and this is a residential area with a community center right there.

Ultimately, when the center opened back up on Tuesday, phone calls went out, the police went to the car. It was very difficult to see inside, because the soot was on the windows, but they were able to see Mr. Russell and ultimately discovered his body.

He was not licensed, [Appellant], to carry a gun on that particular day. And I believe the area that they took him to, where they ultimately killed him, was a remote area, because it was behind the rec center.

And they also drove him around, confined in the car, for a substantial period of time. He was in the third row, so there wasn't even a door for him to get out.

And that would be a brief summary of facts, Your Honor.

N.T., 9/13/10, guilty plea, at 16-19.

On that same date, in accordance with the plea agreement, the trial court sentenced Appellant to twenty years to forty years in prison for third-degree murder, ten years to twenty years in prison for robbery, ten years to twenty years in prison for conspiracy, ten years to twenty years in prison for arson, and three and a half years to seven years in prison for the firearm offense. The sentences were imposed concurrently, and thus, Appellant's aggregate sentence was twenty years to forty years in prison.

Appellant did not file a timely post-sentence motion or a direct appeal. However, on February 17, 2011, Appellant filed a timely, *pro se* PCRA petition, and the PCRA court appointed counsel to assist him. Counsel filed a petition seeking to withdraw, and April 20, 2012, the PCRA court dismissed Appellant's first PCRA petition, as well as granted counsel's petition to withdraw. Appellant did not file an appeal to this Court.

On March 17, 2015, Appellant filed his second *pro se* PCRA petition, and on September 15, 2017, the PCRA court dismissed the petition. Appellant did not file an appeal to this Court.

On April 13, 2018, Todd M. Mosser, Esquire, entered his appearance on behalf of Appellant, and on May 7, 2018, Appellant filed a counseled PCRA petition. Therein, Appellant relevantly averred the following:

> 3. Maurice Stokes gave two different statements to homicide detective James Pitts. The first statement did not implicate [Appellant], the second statement did.
>
> 4. Mr. Stokes subsequently recanted the second statement and explained that he only signed it because Detective Pitts illegally coerced him into signing it through coercive threats and bullying.

- 4 -

5. Based in large part on the fact that Stokes' statement existed which implicated [Appellant], [Appellant] was constrained to plead guilty to third degree murder, kidnapping, and arson.

6. On September 13, 2010, [Appellant] was sentenced to an aggregate of twenty to forty years incarceration. No direct appeal was filed. [Appellant] is currently serving his sentence.

7. On March 19, 2018, [Appellant] learned by way of a newspaper article in the Philadelphia Inquirer that Detective Pitts has a routine habit, pattern, and practice of illegally coercing statements from witnesses and suspects.

\*\*\*

14. In the instant matter, [Appellant] avers that he meets an exception to the timeliness requirements based on newly discovered evidence.

15. It has been revealed that Detective Pitts has a habitual pattern, practice, and routine of coercing witnesses into signing false statements.

16. Specifically, on November 3, 2017, in the case of ***Commonwealth v. Dwayne Thorpe***, CP-51-CR-0011433-2008, the PCRA court vacated Thorpe's conviction and ordered a new trial in light of Detective Pitts' pattern. The Court specifically ruled that the statement at issue in that case could not be used at the new trial.

17. This ruling was featured in the Philadelphia Inquirer and Daily News on November 3, 2017, via the internet and in the newspapers the following day.

18. In the Thorpe case, ten witnesses provided testimony that detailed Detective Pitts' tactics of holding witnesses for extended periods of time, physical violence, threats against family members, threats to take children away, and threats to take Section 8 housing away.

19. [Appellant] was not aware of this ruling and the facts underlying same until March 19, 2018, when he read the article in prison.

Appellant's PCRA Petition, filed 5/7/18, at 3 ¶¶ 3-7, 5-6 ¶¶ 14-19 (citations to exhibits omitted).

On November 13, 2018, the Commonwealth filed a brief in opposition to Appellant's counseled PCRA petition. The Commonwealth asserted there was no evidence that Detective Pitts interviewed Mr. Stokes in connection with the instant crimes. Rather, as testified to by Mr. Stokes during Appellant's preliminary hearing, Detectives Cummings and Glenn interviewed Mr. Stokes and took his statement. Further, the Commonwealth asserted there was no evidence Mr. Stokes recanted his preliminary hearing testimony as to the identity of the detectives who had interviewed him or as to the substance of his statement in which he implicated Appellant in the crimes.

On June 4, 2019, the PCRA court provided Appellant with notice of its intention to dismiss the petition without an evidentiary hearing under Pa.R.Crim.P. 907. On June 20, 2019, Appellant filed a counseled response to the Rule 907 notice. Therein, Appellant indicated he was withdrawing his claim related to Detective Pitts' "habit, pattern, and practice of coercing statements." Appellant's Response, filed 6/20/19, at 2. Instead, he was amending his PCRA petition[2] to raise a claim of "newly-discovered evidence via Richard Fair, who has recanted his prior statement to police in which he identified [Appellant] as one of the perpetrators." *Id.* at 3.

_____

[2] Pa.R.Crim.P. 907 provides that, in response to the PCRA court's notice of its intention to dismiss a PCRA petition without a hearing, the petitioner may respond to the proposed dismissal within twenty days of the date of the notice. Pa.R.Crim.P. 907(1). The PCRA court judge may, *inter alia*, permit the petitioner to amend his PCRA petition in response to the court's notice of its intention to dismiss. *Id.*

Appellant attached to his response an amended PCRA petition wherein he relevantly averred the following:

10. On June 4, 2019, the [PCRA] Court issued its Notice of Intent to Dismiss under Rule 907.

11. [Appellant] objected to the Court's 907 Notice and proffered the instant Amended Petition.

12. [Appellant] respectfully avers that he is entitled to a new trial based on newly discovered exculpatory evidence via Richard Fair, who recanted his previous identification [of Appellant] to homicide detectives as one of Mr. Saunders' accomplices and would testify he did not see [Appellant] on the street that day.

13. Mr. Fair previously told homicide detectives that "Means" was one of the men he seen [sic] involved in the robbery and kidnapping of Mr. Russell, that he had known "Means" for about four years, and [he] identified a photo of [Appellant] as "Means."

14. On June 6, 2019, Mr. Fair gave a signed statement that he seen [sic] two males jump into to [sic] Mr. Russell's truck during the robbery, that he has known [Appellant] for more than 15 years, he did not seen [sic] [Appellant] on the street the day Mr. Russell was murder[ed], and he told homicide detectives that "Means" [(Appellant)] was other [sic] there based on rumors from the neighborhood.

Appellant's Amended PCRA Petition, filed 6/20/19, at 3-4 ¶¶ 10-14.

In support of his amended PCRA petition, Appellant attached an unsworn written statement dated June 6, 2019, which was allegedly signed by Mr. Fair. Appellant claimed in his amended PCRA petition that, prior to June 6, 2019, he was unaware that Mr. Fair did not actually see him on the street at the time of the crimes or that Mr. Fair had made his identification of Appellant based on rumors circulating in the neighborhood. *Id.* Appellant claimed Mr. Fair's recantation met the newly-discovered facts exception to the PCRA

timeliness requirements, and further, constituted after-discovered evidence requiring a new trial.

On July 29, 2019, the PCRA court dismissed Appellant's PCRA petition without an evidentiary hearing. This timely counseled appeal followed. The PCRA court directed Appellant to file a Pa.R.A.P. 1925(b) statement, and Appellant filed a counseled statement. The PCRA court filed a Pa.R.A.P. 1925(a) opinion on December 24, 2019. Therein, the PCRA court examined Appellant's claim with regard to Mr. Fair's June 6, 2019, written statement and concluded Appellant did not meet the requirements of any of the timeliness exceptions. The PCRA court specifically held that "[Appellant's] amended petition for post-conviction relief based on newly-acquired evidence—in the form of the recanted exculpatory evidence of a potential witness—was untimely because [Appellant] failed to plead an exception to the statutory one-year limitation[.]" PCRA Court Opinion, filed 12/24/19, at 5.

Preliminarily, we note our well-established standard of review:

This Court's standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record.

*Commonwealth v. Turetsky*, 925 A.2d 876, 879 (Pa.Super. 2007) (citations omitted).

Pennsylvania law makes clear no court has jurisdiction to hear an untimely PCRA petition. The most recent amendments to the PCRA, effective January 16, 1996, provide a PCRA petition, including a second or subsequent petition, shall be filed within one

year of the date the underlying judgment becomes final. 42 Pa.C.S.A. § 9545(b)(1). A judgment is deemed final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S.A. § 9545(b)(3).

*Commonwealth v. Monaco*, 996 A.2d 1076, 1079 (Pa.Super. 2010)

(citations omitted).

[There are] three statutory exceptions to the timeliness provisions in the PCRA [that] allow for the very limited circumstances under which the late filing of a petition will be excused. 42 Pa.C.S.A. § 9545(b)(1). To invoke an exception, a petitioner must allege and prove:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

*Id.* at 1079-80 (citing 42 Pa.C.S.A. § 9545(b)(i)-(iii)). "We emphasize that it is the petitioner who bears the burden to allege and prove that one of the timeliness exceptions applies."[3] *Commonwealth v. Marshall*, 596 Pa. 587, 947 A.2d 714, 719 (2008) (citation omitted).

_____

[3] We note 42 Pa.C.S.A. § 9545(b)(2) sets forth an initial time period in which all timeliness exceptions must be raised. Specifically, Subsection 9545(b)(2) originally provided that a petition invoking a timeliness exception was required

In the case *sub judice*, Appellant was sentenced on September 13, 2010. He filed neither a timely post-sentence motion nor a direct appeal. Consequently, his judgment of sentence became final on October 13, 2010, upon expiration of the thirty day period to file a direct appeal in this Court. **See** Pa.R.A.P. 903(a). Appellant filed his third PCRA petition on May 7, 2018, which is patently untimely. **See** 42 Pa.C.S.A. § 9545(b)(1).

This does not end our inquiry, however, as Appellant attempts to invoke the timeliness exception provided for in Subsection 9545(b)(1)(ii) pertaining to newly-discovered facts.

> [S]ubsection (b)(1)(ii) has two components, which must be alleged and proved. Namely, the petitioner must establish that: 1) the facts upon which the claim was predicated were unknown and 2) could not have been ascertained by the exercise of due diligence. If the petitioner alleges and proves these two components, then the PCRA court has jurisdiction over the claim under this subsection.

---

to be filed within sixty days of the date the claim could first have been presented. However, effective December 24, 2018, the legislature amended Subsection 9545(b)(2) to read: "Any petition invoking an exception provided in paragraph (1) shall be filed within one year of the date the claim could have been presented." **See** 42 Pa.C.S.A. § 9545(b)(2) (effective December 24, 2018). The amendment to Subsection 9545(b)(2) only applies to "claims arising on [December] 24, 2017, or thereafter." **See id.**, cmt. Appellant claims that, as it pertains to his claim of newly-discovered facts, which he raised in his June 6, 2019, amended PCRA petition, he is entitled to the application of the amended version of Subsection 9545(b)(2). Assuming, *arguendo*, Appellant is correct, for the reasons set forth *infra*, we find he has otherwise failed to demonstrate he pled and proved his entitlement to any of the timeliness exceptions.

***Commonwealth v. Brown***, 111 A.3d 171, 176-77 (Pa.Super. 2015) (quotation omitted).

Here, Appellant relies on Mr. Fair's June 6, 2019, unsworn written statement in claiming he has established the newly-discovered facts exception. In this vein, he contends that, prior to securing the written statement, he was unaware that Mr. Fair had seen only two males enter Mr. Russell's truck, Mr. Fair had not seen Appellant on the street that day, and Mr. Fair told police he saw Appellant based on neighborhood rumors suggesting that Appellant had been involved in the robbery/shooting of Mr. Russell.

We conclude that, assuming, *arguendo*, Mr. Fair's June 6, 2019, written statement presented new facts, which were unknown to Appellant, Appellant has failed to demonstrate the facts could not have been ascertained earlier by the exercise of due diligence.

"Due diligence demands that the petitioner take reasonable steps to protect his own interests. A petitioner must explain why he could not have learned the new fact(s) earlier with the exercise of due diligence. This rule is strictly enforced." ***Brown***, 111 A.3d at 176 (citations and quotation marks omitted).

Here, Appellant asserts that, sometime after learning of Detective Pitts' alleged misconduct in other cases, he decided to investigate to determine whether there were any possible deficiencies in Mr. Fair's statement to the police. Appellant suggests that, prior to securing the June 6, 2019, written

statement from Mr. Fair, he had no reason to suspect there were any deficiencies in Mr. Fair's police statement.

We conclude Appellant has failed to proffer, let alone prove, the necessary due diligence. Appellant makes no claim that he attempted to contact Mr. Fair at any point prior to June 6, 2019, to determine what information Mr. Fair had regarding the incident. Appellant admits that he knew of Mr. Fair's existence as a witness, but he chose not to question the integrity of Mr. Fair's police statement because he believed Mr. Fair to be a "sincere person[.]" Appellant's Amended PCRA Petition, filed 6/20/19, at 6 ¶ 26. Appellant has set forth no steps he took to discover the information contained in Mr. Fair's written statement, and in fact, it appears that when Appellant asked Mr. Fair about the matter in 2019, Mr. Fair gave him a written statement.

Consequently, Appellant failed to meet the newly-discovered facts exception to establish jurisdiction. *See* 42 Pa.C.S.A. § 9545(b)(1)(ii). Appellant did not "take reasonable steps to protect his own interests…[or] explain why he could not have learned the new fact(s) earlier with the exercise of due diligence." *Brown*, 111 A.3d at 176 (citations and quotation marks

omitted). Thus, absent proper jurisdiction, the PCRA court properly dismissed Appellant's third PCRA petition.[4]

For all of the foregoing reasons, we affirm.

Affirmed.

_____

[4] To the extent Appellant contends the PCRA court did not consider Appellant's June 20, 2019, amended PCRA petition, which was attached to his response to the PCRA Court's Rule 907 notice, the record belies his claim. As set forth *supra*, in its December 24, 2019, opinion, the PCRA court indicated that it considered the issue presented in the amended petition but "found that [Appellant's] amended petition for post-conviction relief based on newly-acquired evidence--in the form of the recanted exculpatory evidence of a potential witness--was untimely because [Appellant] failed to plead an exception to the statutory one-year limitation[.]" PCRA Opinion, filed 12/24/19, at 5.

Moreover, to the extent Appellant contends the PCRA court was required to issue a second Rule 907 notice in response to Appellant's amended PCRA petition, we conclude no relief is due. "[The] failure to issue Rule 907 notice is not reversible error where the record is clear that the petition is untimely." ***Commonwealth v. Zeigler***, 148 A.3d 849, 852 (Pa.Super. 2016) (citation omitted). Here, even assuming a second notice was required, Appellant's amended PCRA petition was clearly untimely, and thus, the court's failure to issue a second Rule 907 notice is not reversible error. ***Id.***

Furthermore, to the extent Appellant suggests the PCRA court erred in dismissing his amended PCRA petition without an evidentiary hearing, we note "[t]here is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary." ***Commonwealth v. Jones***, 942 A.2d 903, 906 (Pa.Super. 2008). In the case *sub judice*, the PCRA court properly concluded that Appellant did not raise a genuine issue of material fact, and the PCRA court did not otherwise abuse its discretion in failing to hold a hearing.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/4/20