J-S24037-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
DWIGHT BOWEN :
:
Appellant : No. 2177 EDA 2021

Appeal from the PCRA Order Entered October 12, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0909801-2001

BEFORE: PANELLA, P.J., LAZARUS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.: **FILED AUGUST 8, 2022**

Dwight Bowen (Bowen) appeals *pro se* from the order denying his third petition filed pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546, in the Court of Common Pleas of Philadelphia County (PCRA court) as untimely. He claims that the newly-discovered fact exception is applicable to him because a June 2020 Philadelphia Inquirer article mentions Detective John Bell, an investigator in this case, as part of a story about alleged police misconduct in another, wholly unrelated case. He also claims governmental interference for the Pennsylvania State Police's (PSP) alleged seizure of purported witness affidavits from his prison cell. We affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

We take the following factual background and procedural history from the PCRA court's October 12, 2021 opinion and our independent review of the certified record.

**I.**

On the night of June 5, 2001, Bowen engaged in a physical altercation with several men outside of 1710 Lehigh Avenue, Philadelphia. He returned home to where he lived with Cynthia Loney and her minor daughter, Tiffany Smith. He informed Ms. Smith that he was "beaten up" and that he would return to 1710 Lehigh Avenue to "bomb the house." (*See* N.T. 2/19/04, at 11-20).

After leaving the home and returning a few hours later, he again told Ms. Smith of his plans and stated that he crafted Molotov cocktails, which he had stored elsewhere. Ms. Loney and Ms. Smith attempted to talk Bowen out of his plan, but he left the home around 3:00 a.m. He returned half-an-hour later, asking the two women if they "hear[d] the fire engines" and told them that he "blew the house up." (*Id.* at 11-20). Bowen fell asleep and woke at approximately 6:30 a.m., telling Ms. Loney and Ms. Smith to turn on the news. When they saw the news of the 1710 Lehigh Avenue fire, Bowen stated, "I killed them two kids" and told the women not to "snitch." (*Id.* at 19-20).

The "two kids" to which Bowen referred were a three-year-old and a one-year-old, who were asleep in the 1710 Lehigh Avenue home. Both children died in the fire, and Bowen was apprehended on August 22, 2004.

A jury trial commenced on February 17, 2004. In pertinent part, the Commonwealth presented the testimony of Ms. Smith, who testified about Bowen's threat to firebomb the home and his confession. (*See* N.T. Trial, 9/18/04, at 9-19); (N.T. Trial, 2/19/04, at 11-32). Witness Paris Dennis testified about the physical altercation between himself, Bowen and two other individuals that preceded the fire. (*See* N.T. Trial, 2/17/04, at 77-101). Vernon Reynolds testified that he spoke with Bowen after the fight and that Bowen told him he wanted to firebomb the home. (*See id.* at 118-33).

At the conclusion of the Commonwealth's evidence, Bowen elected to enter a negotiated guilty plea to two counts of second-degree murder and one count of simple assault[1] to avoid the death penalty. The court conducted an extensive colloquy and imposed the mandatory sentence of two terms of life imprisonment to be served consecutively. (*See* N.T. Trial, 2/19/04, at 31-34). Bowen did not file post-sentence motions or a direct appeal.

Bowen filed a *pro se* PCRA petition on May 12, 2004, in which he sought to withdraw his guilty plea and raised several issues. He alleged that trial counsel was ineffective for: (1) inducing his plea; (2) failing to impeach Ms. Smith with a redacted statement in which she alleged that police coerced her

---

[1] "The unrelated charge of simple assault arose from an assault upon a female correctional officer. The concurrent sentence of one to two years imprisonment was imposed upon this offense." (*Commonwealth v. Bowen*, 870 EDA 2005, at *2 n.1).

into testifying; and (3) failing to impeach Mr. Reynolds about the fact that he received favorable treatment in his own case to induce his plea. He also sought discovery about why Detective Bell no longer worked for the Philadelphia Police Department. (*See Pro se* PCRA Petition, 5/12/04, at 6 ¶ 13, 7 ¶ 14, Addendum ¶¶ 1, 3, 9). Because Bowen had entered the guilty plea admitting to the crimes, appointed counsel filed an amended PCRA petition focusing on whether Bowen was entitled to withdraw the plea. (*See* Amended PCRA Petition, 10/05/04, at 4). The PCRA court denied the petition on February 3, 2005. This Court affirmed the denial on November 16, 2005, and the Pennsylvania Supreme Court denied his petition for allowance of appeal on April 20, 2006. (*See Commonwealth v. Bowen*, 890 A.2d 1093 (Pa. Super. filed Nov. 16, 2005) (unpublished memorandum), *appeal denied*, 897 A.2d 450 (Pa. 2006)).

Bowen filed a second PCRA petition on December 11, 2006, again seeking to withdraw his guilty plea and the PCRA court dismissed the petition as untimely. On appeal, he argued the petition should be treated as timely because counsel misinformed him of the filing deadline and was ineffective for failing to use all peremptory challenges. (*See Commonwealth v. Bowen*, 1913 EDA 2007, at *3 (Pa. Super. filed Mar. 19, 2008) (unpublished memorandum)). This Court affirmed the dismissal and he did not petition for allowance of appeal.

On March 1, 2021, Bowen filed the PCRA petition currently under review. He invoked the newly-discovered facts exception to the PCRA time-bar, arguing that a June 2020 Philadelphia Inquirer article that mentioned the alleged misconduct of Detective Bell in an unrelated case constituted a newly-discovered fact. Specifically, he maintained that it established that Detective Bell, one of the officers assigned to his case, used coercive tactics to obtain witness statements against him. (**See** *Pro se* PCRA Petition, 3/01/21 at 3). He maintained that he did not attach affidavits from witnesses Ms. Smith, Ms. Loney and Mr. Reynolds that he had provided to trial counsel because they appeared to have been thrown away when he was transferred between prisons, and that, although he wanted a hearing, he was unaware of the witnesses addresses or dates of birth. (**See *id.*** at 4 ¶ 6, 6 ¶ 12). The Commonwealth responded that the petition should be dismissed because it was untimely and he could not provide certifications from the witnesses justifying a hearing, but that it would not object if the court elected to appoint counsel to assist Bowen to obtain the necessary certifications and to reacquire the affidavits he allegedly provided to trial counsel. (**See** Commonwealth's Response to PCRA, 8/27/21, at 1, 8). On September 7, 2021, the court issued Rule 907 notice of its intent to dismiss the petition without a hearing. ***See***

Pa.R.Crim.P. 907(1). It formally dismissed the petition as untimely with no exception proven on October 12, 2021. Bowen timely appealed.[2, 3]

## II.

## A.

Before considering the merits of Bowen's PCRA petition, we must first determine whether the PCRA court properly found that it is untimely under the PCRA's jurisdictional time-bar. A PCRA petition, "including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final." 42 Pa.C.S. § 9545(b)(1). A judgment becomes final at the conclusion of direct review, "including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S. § 9545(b)(3). Because the timeliness requirements of the PCRA are jurisdictional in nature, courts

---

[2] The court did not order Bowen to file a statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(b).

[3] Proper appellate review of a PCRA court's dismissal of a PCRA petition is limited to the examination of "whether the PCRA court's determination is supported by the record and free of legal error." *Commonwealth v. Miller*, 102 A.3d 988, 992 (Pa. Super. 2014) (citation omitted). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Commonwealth v. Lawson*, 90 A.3d 1, 4 (Pa. Super. 2014) (citations omitted). "This Court grants great deference to the findings of the PCRA court, and we will not disturb those findings merely because the record could support a contrary holding." *Commonwealth v. Hickman*, 799 A.2d 136, 140 (Pa. Super. 2002) (citation omitted).

cannot address the merits of an untimely petition. ***See Commonwealth v. Moore***, 247 A.3d 990, 998 (Pa. 2021).

Bowen's judgment of sentence became final on March 21, 2004, when his time to file a direct appeal to this Court expired. ***See*** 42 Pa.C.S. § 9545(b)(3). Therefore, he had until March 21, 2005, to file a timely PCRA petition. ***See*** 42 Pa.C.S. § 9545(b)(1). Because Bowen did not file the instant PCRA petition until approximately sixteen years later, on March 1, 2021, it is facially untimely, and we lack jurisdiction to consider the appeal's merits unless he pleads and proves one of the three limited exceptions to the time-bar:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii).

**B.**

Bowen argues that the discovery of the June 2020 Philadelphia Inquirer article that referenced the alleged misconduct of Detective Bell in an unrelated

2017 case[4] was a newly-discovered fact that supported his claim that the officer coerced or threatened witnesses Cynthia Loney, Tiffany Smith and Paris Dennis to give false statements in this case. (*See* Bowen's Brief, at 2); (*Pro se* PCRA Petition, at 3).[5]

Bowen invokes the newly-discovered fact exception. As recently observed by this Court:

> The newly-discovered fact exception "renders a petition timely when the petitioner establishes that [`]the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence.[']" ***Commonwealth v. Small***, 238 A.3d 1267, 1271 (Pa. 2020), (quoting 42 Pa.C.S. § 9545(b)(1)(ii).) A PCRA court must first determine "whether the facts upon which the claim is predicated

_____

[4] According to the Commonwealth, the article "explains that the Commonwealth moved to *nolle pros* **John Miller**'s case because of alleged misconduct by Detective Bell and other officers" in failing to tell anyone outside the police department about exculpatory evidence, including that the primary witness (who later confessed to the subject crime) provided verifiably false information. (Commonwealth's Brief, at 9) (emphasis added).

[5] Bowen also maintains that although he had affidavits from Ms. Smith and Mr. Reynolds supporting his allegation, the PSP committed governmental interference by confiscating them, thus making him unable to raise the claim previously. (*See* Bowen's Brief, at 3). The claim would not afford him relief where the record reveals that Bowen raised the claim that Mr. Reynolds and Ms. Smith were allegedly coerced in 2004; thus, he is unable to establish that any later alleged confiscation of the purported affidavits resulted in an inability to raise the coercion claim in a timely petition. ***See Commonwealth v. Abu-Jamal***, 941 A.2d 1263, 1268 (Pa. 2008), *cert. denied*, 555 U.S. 916 (2008) (To establish governmental interference, the petitioner must "plead[] and prov[e] the failure to previously raise the claim was the result of interference by government officials, and the information could not have been discovered earlier with the exercise of due diligence."); ***see also Trivigno***, ***infra*** at *5 ("[A]n affidavit, itself, cannot be a newly-discovered fact but, rather, the 'fact' may be the information reported in the affidavit.").

were unknown to the petitioner[.]" ***Id.*** at 1282 (original quotation marks omitted). If the PCRA court concludes that the facts were unknown, then the PCRA court must next examine whether "the facts could have been ascertained by the exercise of due diligence, including an assessment of the petitioner's access to public records." ***Id.*** (citation omitted).

***Commonwealth v. Trivigno***, 262 A.3d 472, at *3 (Pa. Super. filed Aug. 6, 2021).[6] Under the newly-discovered fact exception, "the focus is on newly discovered facts, not on a new source for previously unknown facts." ***Commonwealth v. Marshall***, 947 A.2d 714, 720 (Pa. 2008) (emphasis added).

Bowen argues that the June 2020 Philadelphia Inquirer article naming Detective Bell as being part of an investigation into misconduct in an unrelated case was a newly-discovered fact supporting a timeliness exception. (***See*** Bowen's Brief, at 2). Again, we find ***Trivigno*** to be instructive. In ***Trivigno***:

> Appellant argue[d], in sum, that a newspaper article describing or encouraging ongoing investigations of [an investigating detective]'s alleged misconduct in other cases satisfies the newly-discovered fact exception to the PCRA jurisdictional time-bar. We find ***Commonwealth v. Chmiel***, 173 A.3d 617 (Pa. 2017) instructive in resolving the precise issue before us. In ***Chmiel***, our Supreme Court held that an FBI press release, and the attendant admissions by the FBI contained therein, constituted a newly-discovered fact for purposes of triggering an exception to the PCRA jurisdictional time-bar. ***Chmiel***, 173 A.3d at 629. Chmiel asserted that an FBI press release and a subsequent *Washington Post* article publicizing the press release contained facts which satisfied the newly-discovered fact exception. ***Id.*** at 625. Inherent in both the FBI press release

---

[6] "Non-precedential Superior Court decisions filed after May 1, 2019 may be cited for their persuasive value."

and the *Washington Post* article were the facts that (1) "the FBI publicly admitted that the testimony and statements provided by its analysts about microscopic hair comparison analysis were erroneous in the vast majority of cases" and (2) "the FBI had trained many state and local analysts to provide the same scientifically flawed opinions in state criminal trials." ***Id.*** Our Supreme Court concluded that it was not the source of the facts, *i.e.*, a press release or a newspaper article, that satisfied the newly-discovered fact exception but, rather, it was the information contained in those media sources which satisfied the newly-discovered fact exception. ***Id.*** at 628. Stated simply, facts are not what a reader gleans from media reports or newspaper articles but, instead, facts are the substantive events, *i.e.*, the FBI's admission of error, which prompted the report by the media. ***See Castro***, 93 A.3d at 825 n.11 (reiterating that, "[facts] cannot consist of what one hears on the news" (citation omitted))[.] …

… [Here,] [a]lthough the newspaper article reports instances of alleged misconduct by [the subject detective] in his investigation of other criminal cases, the newspaper article, unlike the FBI press release in ***Chmiel***, does not specifically cite any admissions or conclusive findings of wrong-doing by [the detective] that may be linked to Appellant's case. ***Id.*** … Therefore, Appellant failed to demonstrate that the newspaper article contained a fact that triggered the newly-discovered fact exception set forth at 42 Pa.C.S.A. § 9545(b)(1)(ii).

***Trivigno***, *supra* at *4 (one case citation omitted).[7]

Here, the Commonwealth represents that the Philadelphia Inquirer article in question was predicated on the Commonwealth's motion to *nolle pros* a case because of police misconduct, which included that of Detective Bell. According to both the Commonwealth and the PCRA court, the article

---

[7] Instantly, Bowen has not provided this Court with a copy of the Philadelphia Inquirer article, thus impeding our review. Therefore, we will rely on the representations of the court and the Commonwealth about what it contained.

mentions Detective Bell one time when it states: "Andrew Richman, chief of staff in the city's Law Department, declined to comment on Miller's lawsuit, which names the city as a defendant, as well as the detectives involved in his case: Jeffrey Piree, William Coogan, Richard Bova, John Bell, and Michael Sharkey." (PCRA Ct. Op., at 1 n.1); (Commonwealth's Response to PCRA Petition, at 4). Therefore, it is not clear if the article mentions instances of Detective Bell's alleged misconduct in the other case. However, even if it does, there is no fact of any finding of wrongdoing in **this** case. Hence, Bowen has failed to establish that the article contained a fact that triggered the newly-discovered facts exception. *See Trivigno*, *supra* at \*4.

Additionally, in 2014, he was aware of his claims that Detective Bell had coerced Ms. Smith into testifying and had given Mr. Reynolds favorable treatment in his own case to induce his testimony. Although PCRA counsel elected not to pursue these claims at that time, Bowen failed to allege any ineffectiveness on counsel's part in this regard within the one-year time-limit for doing so.[8]

---

[8] We make no finding as to PCRA counsel's effectiveness.

## C.

Moreover, even assuming *arguendo* that the article itself could somehow be construed as a "fact" or even contained facts about Bowen's case, Bowen would not be entitled to a new trial where, at the conclusion of the Commonwealth's evidence, he voluntarily entered a negotiated guilty plea to avoid the death penalty, and a panel of this Court has conclusively determined that "[t]he record … provides overwhelming support for the conclusion of the PCRA court that appellant made a knowing, intelligent, and voluntary decision to enter a guilty plea." (**Commonwealth v. Bowen**, 870 EDA 2005, at *5 (Pa. Super. filed Nov. 10, 2005) (unpublished memorandum). The panel observed:

> In the context of a post-sentence challenge to a guilty plea, this Court has observed that a defendant may not successfully claim that he knowingly lied to the court while he was under oath, even where he avers that counsel induced the lies.
>
> A criminal defendant who elects to plead guilty has a duty to answer questions truthfully. We [cannot] permit a defendant to postpone the final disposition of his case by lying to the court and later alleging that his lies were induced by counsel.
>
> **Commonwealth v. Pollard**, 832 A.2d 517, 524 (Pa. Super. 2003) (citation omitted).
>
> [Here,] [a]fter nearly one week of trial, appellant decided to accept the Commonwealth's offer to enter a negotiated guilty plea in exchange for sentences of life imprisonment, thus foreclosing the possibility of a sentence of death. Appellant entered into both an oral and a written colloquy and the judge explained to appellant the nature of the charges and the factual basis for the guilty plea. Further, counsel for appellant placed on the record (1) that he had discussed at length with appellant that the Commonwealth was seeking the death penalty but had offered a plea agreement

carrying a penalty of life imprisonment, and (2) that he had advised appellant that it was his professional opinion that, because of the numerous aggravating circumstances, there was a likelihood that appellant would be sentenced to death. The trial judge reiterated to appellant the possible sentences for murder and simple assault. Thus, the sentencing options were fully explained to appellant prior to entry of his plea. Appellant indicated that he had not been forced, threatened, or coerced into entering the plea, and that he fully understood his rights, and was satisfied with his counsel. Appellant indicated that he was entering the guilty plea because he was guilty and also to avoid the death penalty.

(*Id.* at \*5-6) (emphasis added).

Hence, even if either the Philadelphia Inquirer article were a "fact" for the newly-discovered facts exception to the PCRA or it contained a fact about misconduct in Bowen's case, it would not afford Bowen relief. He entered a negotiated guilty plea in which he admitted his guilt and this Court already found this was voluntary and knowingly entered. Hence, this "fact" would not change the outcome, even if he now regrets entering the plea. In other words, even if the article established that Detective Bell coerced the witness statements in this case, and Bowen claims that he was lying under oath when he admitted his guilt, this would not impact the fact that Bowen entered a voluntary and knowing plea. **See Pollard**, **supra** at 524.[9]

_____

[9] We also note that, even were the article considered "after discovered evidence," it would not form the basis for a new trial where Bowen failed to establish that the claims surrounding Detective Bell's misconduct in the unrelated case would be used for any purpose other than impeachment of witness testimony. As early as May 2004, Bowen was on notice that Detective Bell was no longer with the Philadelphia Police Department and of the alleged
*(Footnote Continued Next Page)*

- 13 -

Hence, the PCRA court's decision is supported by the record and free of legal error where Bowen failed to establish a timeliness exception and, even if he had, he would not be entitled to relief. **See *Miller***, ***supra*** at 992; ***Pollard***, ***supra*** at 524.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/8/2022

---

claims of coercion of Ms. Smith and Mr. Reynolds, and he claimed that trial counsel was ineffective for failing to impeach the witness testimony with these claims of coercion. **See *Commonwealth v. Griffin***, 137 A.3d 605, 610 (Pa. Super. 2016) ("A defendant seeking a new trial must demonstrate he will not use the alleged after-discovered evidence solely to impeach a witness's credibility.") (internal quotation marks omitted).