J-S16013-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
JORGE MARTINEZ :
:
Appellant : No. 1579 EDA 2022

Appeal from the PCRA Order Entered May 5, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006386-2009

BEFORE: DUBOW, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY DUBOW, J.: **FILED MAY 23, 2023**

Appellant, Jorge Martinez, appeals *pro se* from the May 5, 2022 Order dismissing as untimely his fifth petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46. After careful review, we affirm.

The facts and procedural history pertinent to this appeal, as gleaned from the voluminous record and the PCRA court's September 13, 2022 opinion, are as follows. The Commonwealth charged Appellant with first-degree murder and possession of an instrument of crime in connection with the March 2, 2008 shooting of Nicholas Cruz in North Philadelphia.

Prior to trial, Appellant's counsel indicated that Appellant wished to present at trial the testimony of Liz Conception, a witness to Mr. Cruz's murder, to establish that she initially told police that the shooter was thin.[1]

_____

[1] Appellant was not thin.

However, Ms. Conception had moved to Texas and was, therefore, unavailable to testify. The Commonwealth sought to preclude introduction of Ms. Conception's statement as hearsay, but also argued that if the court admitted the statement, the Commonwealth should admit two subsequent oral hearsay statements made by Ms. Conception to Philadelphia Police Officers Raphael Cordero and William Hunter. In one statement, Ms. Conception identified Appellant as the shooter but indicated that she was "afraid to say it on paper."[2] In the other statement made to, and memorialized in writing by, Detective Dennis Dusak, Ms. Conception denied that she had ever identified Appellant as the shooter to Officer Cordero. After the parties were unable to agree on a stipulation as to the three statements, the trial court concluded that Ms. Conception's statements constituted inadmissible hearsay.

At trial, Appellant testified that, on the morning of Mr. Cruz's murder, he woke up at the home of his then-girlfriend and took a taxi to North Philadelphia to pick up heroin from a supplier. He stated that after he got the heroin, he was walking in the area of the murder when he heard a gunshot, turned a corner, and saw Mr. Cruz's body lying on the ground. He testified that he quickly ran into the multi-room home that he shared with, among other people, his associate, Jonathan Rivera. He stated he went into Mr. Rivera's room and told him to meet him at McDonalds. Appellant further stated that he later decided against meeting Mr. Rivera. During his trial

_____

[2] PCRA Ct. Op., 9/13/22, at 6.

- 2 -

testimony, Appellant repeatedly used singular, and not plural, pronouns to describe his actions, indicating that Appellant was alone after leaving his girlfriend's house that morning.

The Commonwealth presented the testimony of various witnesses, including Mr. Rivera, who testified, *inter alia*, that when Appellant came to his room on the morning of the shooting, Appellant told him that they had to leave because he had just shot someone outside. Glorimar Marquez also testified that she first saw Appellant and his co-defendant, Edilberto Labrada, arguing with Mr. Cruz that morning and then she saw Appellant shoot Mr. Cruz. Another eyewitness, Maria Gonzalez,[3] testified that she heard Appellant tell Mr. Rivera that he had shot Mr. Cruz, that she had seen Appellant with a gun which she knew Appellant kept in a book bag in the front room of the house where they all lived, and that, after the shooting, the book bag was gone.

On February 25, 2010, a jury convicted Appellant of the charged crimes. That same day, the trial court sentenced Appellant to life imprisonment without the possibility of parole. This Court affirmed Appellant's judgment of sentence and, on June 26, 2012, the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal. **See Commonwealth v. Martinez**, 43 A.3d 529 (Pa. Super. 2012), *appeal denied*, 47 A.3d 846 (Pa. 2012). Appellant did not seek further review of his judgment of sentence.

_____

[3] Ms. Gonzalez also lived in the multi-room home shared by Appellant and Mr. Rivera.

Appellant filed PCRA petitions in 2012, 2016, 2018 and 2019, none of which garnered him relief. In his 2019 petition, Appellant averred, *inter alia*, that: (1) he had recently discovered that Police Officer Raphael Cordero, one of the officers who investigated Mr. Cruz's murder, had been accused of misconduct; and (2) the trial court erred in excluding Ms. Conception's statement claiming that the shooter was thin (unlike Appellant) after the Commonwealth had successfully argued that she had later recanted that particular identification statement. On June 19, 2019, the PCRA court dismissed this petition as untimely.

On March 4, 2021, Appellant filed the instant *pro se* petition, his fifth. Appellant acknowledged that his petition was untimely but invoked the governmental interference and newly discovered facts exceptions to the PCRA's jurisdictional time-bar. **See** 42 Pa.C.S. § 9545(b)(1)(i), (ii).

In the petition, Appellant asserted that he is entitled to a new trial based on an affidavit he received on February 4, 2021, from Brian O'Leary, an investigator for the Federal Community Defender Office, who had interviewed eyewitness Liz Conception. According to Appellant, Mr. O'Leary's affidavit reported that he had spoken with Ms. Conception who told him that she had never identified Appellant as the shooter. PCRA Petition, 3/4/21, at 4. Appellant attached a copy of Mr. O'Leary's affidavit to his petition as an exhibit. Mr. O'Leary's affidavit refers to an "attached, unsigned, one page affidavit" containing Ms. Conception's statement to Mr. O'Leary, but Appellant

did not submit to the PCRA court an affidavit from Ms. Conception. *See* O'Leary Affidavit, 1/26/21, at 1.

Appellant subsequently supplemented his PCRA petition three times. His first supplement, filed on August 3, 2021, contained an affidavit from his former girlfriend dated June 1, 2021, in which she asserts that she was with Appellant at the time of the shooting, that he was unarmed, and that he did not murder Mr. Cruz. In the affidavit, his former girlfriend explains that she refused to make herself available to testify at Appellant's trial because she was involved with DHS, focused on efforts to reunify with her children, and feared retaliation from the authorities if she testified at Appellant's trial. Appellant claimed that he had become aware of his former girlfriend's alibi statement in February 2021, through Mr. O'Leary's investigation.

In his second supplement, filed on August 16, 2021, Appellant submitted a second affidavit from Mr. O'Leary explaining that Mr. O'Leary had discovered that Ms. Conception had returned to Philadelphia, noting that "Liz Conception" is an alias, and reporting that Ms. Conception refused to give him her real name. Appellant also included an unsigned, undated, handwritten, barely legible photocopy of a document that he asserted was "prepared in the presence of Ms. Conception[.]" Second Supplemental PCRA Petition, 8/16/21, at 2. Appellant claimed that this document, which he characterized as an "affidavit," memorialized Ms. Conception's "assertions during an interview conducted by [Attorney Claudia Flores of the Federal Community Defender Office and Mr. O'Leary]" that (1) Ms. Conception had spoken with police

officers twice about Mr. Cruz's murder; (2) she did not identify the shooter on either occasion; and (3) she did not see the shooter's face. ***Id.*** at 2, 4. Notably, Ms. Conception's name does not appear anywhere on the unsigned, undated document and the document does not identify who drafted it.[4] ***Id.*** at 4.

In his third supplement, filed on October 8, 2021, Appellant asserted that the Commonwealth engaged in misconduct at trial by presenting information that was tainted by the misconduct of former Police Officer Cordero. He also asserted that Police Officer George Fetters's failure to interview Liz Conception during his investigation constituted governmental interference. He explained that had Officer Fetters interviewed Ms. Conception, the Commonwealth would not have opposed Appellant's request to admit Ms. Conception's exculpatory statement describing the shooter as thin. Appellant also claimed that Officers Fetters, Hunter, and Cordero engaged in misconduct by fabricating a violation of a protection from abuse order as a pretext for arresting Appellant.

On October 14, 2021, the Commonwealth filed a brief in opposition to Appellant's PCRA petition, to which Appellant filed a response on October 25, 2021.

---

[4] The handwritten document contains two blank spaces near the top which appear to be where an affiant's name would appear. It also contains what appears to be a signature line at the bottom left of the document, which is also blank.

On February 1, 2022, the PCRA court filed a notice of intent to dismiss Appellant's petition as untimely pursuant to Pa.R.Crim.P. 907. Appellant did not file a response to the court's Rule 907 notice.

On March 4, 2022, the PCRA court dismissed Appellant's petition as untimely. On March 11, 2022, Appellant filed a response to the court's Rule 907 notice and a motion for reconsideration of the order dismissing his petition. On March 21, 2022, the PCRA court granted Appellant's motion for reconsideration and indicated that it would consider Appellant's response to its Rule 907 notice.

On May 5, 2022, after considering Appellant's response to the court's Rule 907 notice and finding that he "merely reargue[d] the same issues,"[5] the PCRA court again dismissed Appellant's petition as untimely.

This *pro se* appeal followed. Both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

Appellant raises the following six issues for our review:

[1.] Did the court abuse its discretion when finding Appellant's newly discovered facts untimely although the source(s) were either "beyond Pennsylvania's subpoena powers," and/or uncooperative previously, however, becoming available no earlier than February 4, 2021?

[2] Did the lower court abuse its discretion when denying Appellant's PCRA petition without a hearing from the sources of the presented affidavit(s), and defense counsel, to explain the reason(s) Appellant w[as] advised to refrain from mentioning his alibi witness at the time of his testimony?

---

[5] Order, 5/5/22.

[3.] Did the PCRA court err[] in finding Appellant's recent discoveries untimely, and/or without merit where the evidence/information undoubtedly established governmental interference in many ways/forms to deprive one of his guarantee[d] constitutional rights?

[4.] Did the court below err[] when deeming the Commonwealth['s] failure to disclose material facts harmless simply because "the officer was not a testifying witness" in Appellant['s] case/trial?

[5.] Did the PCRA court abuse its discretion when disregarding the admissibility of perjured testimony by the acting prosecutor, A.D.A. John Doyle[,] during Appellant's trial?

[6.] Does Appellant possess a guarantee[d] right to present exculpatory evidence that could exonerate Appellant?

Appellant's Brief at 4.

**A.**

When reviewing the propriety of an order denying PCRA relief, we consider the record "in the light most favorable to the prevailing party at the PCRA level." **Commonwealth v. Stultz**, 114 A.3d 865, 872 (Pa. Super. 2015) (citation omitted). We must determine whether the evidence of record supports the conclusions of the PCRA court and whether the ruling is free of legal error. **Commonwealth v. Robinson**, 139 A.3d 178, 185 (Pa. 2016). With regard to the PCRA court's legal conclusions, however, our standard of review is *de novo*. **Commonwealth v. Spotz**, 18 A.3d 244, 259 (Pa. 2011).

For a court to have jurisdiction in any PCRA proceeding, the appellant must have either (1) filed the petition within one year of the judgment of sentence becoming final, or (2) pleaded and proved a timeliness exception. 42 Pa.C.S. § 9545(b)(1). There is no dispute that Appellant's fifth PCRA

Petition, filed more than seven years after his judgment of sentence became final on September 24, 2012, is patently untimely.[6] Thus, we consider whether Appellant pleaded and proved a timeliness exception in his petition.

**B.**

Appellant argues that his petition falls under the newly-discovered fact and government interference exceptions to the PCRA's time-bar. We will address each *seriatim*.

### ***Newly-Discovered Fact Exception***

The newly-discovered fact exception requires proof that (1) "the facts upon which the claim is predicated were unknown to the petitioner[,]" and (2) the facts "could not have been ascertained by the exercise of due diligence[.]" 42 Pa.C.S. § 9545(b)(1)(ii).[7] To satisfy the due diligence element of the exception, the petitioner must show that he made reasonable efforts "based on the particular circumstances, to uncover facts that may support a claim for collateral relief." ***Commonwealth v. Burton***, 121 A.3d 1063, 1071 (Pa. Super. 2015) (*en banc*), *aff'd* 158 A.3d 618 (Pa. 2017).

---

[6] Appellant had until September 24, 2013, one year from the expiration of the period to request review by the U.S. Supreme Court, to timely file his petition. U.S. Sup. Ct. R. 13(a); 42 Pa.C.S. § 9454(b)(3) (explaining that a judgment becomes final one year after the conclusion of direct review). Appellant's petition, filed on March 4, 2021, is patently untimely.

[7] We conduct our review mindful that "the 'new facts' exception . . . does not require any merits analysis[.]" ***Commonwealth v. Brown***, 111 A.3d 171, 177 (Pa. Super. 2015).

Notably, a petitioner does not satisfy the Section 9545(b)(1)(ii) time-bar exception where he merely alleges a newly discovered or newly willing source for previously known facts. ***Commonwealth v. Marshall***, 947 A.2d 714, 721 (Pa. 2008).

In support of his claim that the newly-discovered facts exception to the PCRA's time-bar applies, Appellant relies on the unsigned document he has characterized as an "affidavit," purportedly prepared "in the presence of" Liz Conception and the affidavit of his former girlfriend. With respect to the unsigned "affidavit," Appellant claims that "the court below places an unreasonable burden on Appellant to produce this Material Witness, who the court below recognizes, lives beyond our subpoena powers." Appellant's Brief at 14.

In considering Appellant's claim regarding the unsigned "affidavit" stating that Ms. Conception never told police that Appellant was the shooter, the PCRA court found as follows:

> This statement is not a new fact, as it is contained in the police activity sheets which were in [Appellant's] possession at the time of trial. Ms. Conception could not be located at [the] time of trial and her statement was not admitted. If [Appellant] is claiming that she is now a new witness since she made herself unavailable for years, which prohibited him from presenting her testimony, his claim still fails. She is not a witness who was ever ready or willing to testify. . . . Even now, she refused to sign the affidavit taken by the investigator or to give her real name.

PCRA Ct. Op., 9/13/22, at 5.

We agree. The record reflects that Appellant knew at the time of his 2008 trial that Ms. Conception was a witness to the shooting and that his trial

- 10 -

counsel had attempted to locate her. He was also aware at that time that Ms. Conception had made numerous contradictory pre-trial statements to the police consistent with those set forth by Mr. O'Leary in his affidavit and in the unsigned "affidavit" attributed to Ms. Conception. In addition, the unsigned "affidavit" states only that she was unable to identify the shooter—not that Appellant was not the shooter. Furthermore, Ms. Conception refused to make herself available to testify at trial and, despite Mr. O'Leary's affidavit stating that Ms. Conception is now back in town, she did not make herself available to testify at a PCRA hearing. Consequently, Appellant has failed to demonstrate that the unsigned "affidavit" satisfies the newly-discovered fact exception to the PCRA's time-bar.

With respect to his former girlfriend's affidavit, Appellant claims that "he was always aware that [she] was by his side" but "the reasons for her abandonment" constitute newly-discovered facts. Appellant's Brief at 14. Appellant asserts that "all he knew was that defense counsel [] informed him that she had refused to involve herself with Appellant's legal defense, and asked Appellant to leave her out of it! It was then that defense [] counsel advised Appellant to refrain himself from mentioning her during his testimony at trial." *Id.*

The PCRA court determined that the alibi provided for Appellant by his former girlfriend in her affidavit did not constitute a new fact for purposes of the PCRA's time-bar exception because: (1) if it were true that she was with Appellant at the time of the shooting, Appellant would have known of that

"fact" all along, and (2) the purported new fact contradicted Appellant's own trial testimony that he was alone. PCRA Ct. Op. at 4.

Following our review of the record, including the notes of testimony from Appellant's trial, we agree with the PCRA court's determination. Notably, as set forth above, Appellant concedes in his Brief to this Court, that he was "always aware that [his girlfriend] was by his side." Apellant's Brief at 14. Thus, her affidavit, in essence, establishes a "newly willing source for previously known facts," which does not satisfy the newly discovered fact's exception to the PCRA's time-bar.[8]

### *Government Interference Exception*

Appellant has also invoked the governmental interference exception to the PCRA's time-bar. The government interference exception requires proof that "the failure to raise the claim previously was the result of interference by government officials[.]" 42 Pa.C.S. § 9545(b)(1)(i). *See also* ***Commonwealth v. Abu-Jamal***, 941 A.2d 1263, 1268 (Pa. 2008). "Any petition invoking an exception provided in paragraph (1) shall be filed within one year of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).

In support of the applicability of this exception, Appellant asserts that the trial prosecutor engaged in misconduct by presenting information at trial

---

[8] Moreover, to the extent that Appellant asserts that the reason for his former girlfriend's "abandonment" of him constitutes a new fact, he has not explained in his Brief how this purported new fact is relevant to his convictions.

that was tainted by the misconduct of former Police Officer Cordero. Appellant's Brief at 13, 16. In particular, Appellant claims that

> [t]rial-[p]rosecutor, A.D.A. John Doyle, engaged in [p]rosecutorial [m]isconduct when assuming the [investigating] officers could have been taken at their word when informing him about facts not supported by any of the disclosed materials. [] Apparently, [f]ormer[ o]fficer Rafael Cordero, along with William Hunter, and Detective Dennis Dusak, assured A.D.A. Doyle, their (independent) investigation denies the actual offender being [t]hin as the sole eye witness to the matter at bar, recanted her initial statement to them.

*Id.* at 13 (underlining omitted).

As noted above, in his fourth PCRA petition filed in 2019, Appellant raised a claim arising from the revelation that Officer Cordero was among a group of officers "accused of having fabricated evidence and or coerced witnesses to obtain wrongful convictions." PCRA Petition, 2/25/19, at ¶ 4 (unnecessary capitalization omitted). In that petition, Appellant also asserted that he had discovered "favorable information" consisting of Liz Conception's "recanted [] statement which clearly exonerates [Appellant] from wrong doing(s)." *Id.* at ¶ 6 (unnecessary capitalization omitted). It is evident, therefore, that Appellant was aware of the facts underlying his current claim prior to filing his petition in 2019. Thus, Appellant failed to establish that he brought the instant claim—raised in his March 4, 2021 petition—within one year of the date he could have presented it.[9]

---

[9] Moreover, because Appellant raised these claims in his 2019 PCRA petition, which the PCRA court dismissed, these claims have been previously litigated. *See* 42 Pa.C.S § 9544(a).

- 13 -

**C.**

In sum, we agree with the PCRA court that Appellant failed to plead and prove any of the timeliness exceptions provided in 42 Pa.C.S. § 9545(b)(1). Thus, the court properly dismissed Appellant's petition as untimely. Accordingly, we affirm the denial of PCRA relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/23/2023